**In re CRAIG G., Jr., et al.**

**Nos. 99–299–Appeal.**

Supreme Court of Rhode Island.

Jan. 30, 2001.

---

Frank P. Iacono, Jr., E. Greenwich, Thomas J. Corrigan, Jr., Providence, for Plaintiff.

Paula Rosin, Providence, Leo F. Manfred, Westerly, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on December 11, 2000, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the issues raised on appeal at this time.

The respondent, Craig Gorman, Sr. (father or respondent),[1] appeals from a decree of the Family Court terminating his parental rights to his children, Rhea, born July 11, 1991, and Craig, Jr., born August 18, 1993. The respondent argued that the trial justice erred in finding that he had been offered services by the Department of Children, Youth and Families (DCYF) to address the problems that led to DCYF's assuming custody of his children. The father also maintained that the trial justice erred in finding that he had abandoned the children, pursuant to G.L.1956 § 15-7-7(a)(4). Ultimately, he contended, the trial justice erred in granting DCYF's petition to terminate his parental rights to these minor children.

DCYF became involved with this family on August 31, 1995, after an allegation of abuse by both the father and his live-in girlfriend.[2] A short time after DCYF investigated this incident, respondent and the children returned to live with the children's mother. This reunion lasted only three days. On September 18, 1995, respondent left the home and the children remained with their mother. On February 23, 1996, the children were taken from their mother's home, at her request, and placed in non-relative foster care.

The respondent scheduled his first visit with the children since leaving the home for April 24, 1996, six months after he left. He arrived fifty minutes late, thus missing the opportunity to visit his children. The respondent scheduled another visit for May 8, 1996. He failed to appear for that appointment as well, citing a Family Court hearing for his failure to appear to visit with his children. On May 22, 1996, respondent finally saw his children for the first time, eight months after he left them with their mother. On June 5, 1996, Katherine Bonneau (Bonneau) a DCYF case worker, prepared a case plan for respondent, with the objective that respondent provide and maintain safe and adequate housing for the children. To achieve these objectives, it was necessary for respondent to attend all scheduled appointments on time and to openly discuss issues pertaining to his family, to follow through with any recommendations for additional ser-

---

1. The children's biological mother did not join in the appeal. The trial justice noted that she voluntarily terminated her parental rights and consented to the adoption of the children.

2. The allegations consisted of a charge that the girlfriend choked Rhea, then four years old, and that the father locked the two children in a room and refused to feed them.

vices and prepare his home for reunification with the children. This case plan was presented to the father, but was never signed.

On July 23, 1996, Janice O'Connor (O'Connor), the new caseworker assigned to this family, sent respondent a letter introducing herself as such and urging him to schedule another visit with the children. The respondent appeared at DCYF the next day and provided O'Connor with the phone number of his mother, stating that she could take messages for him. He also indicated that he would sign the case plan, but wanted to consult his attorney first. O'Connor arranged the next visit with respondent and his children for August 7, 1996. The day before the visit was scheduled to take place, the father's girlfriend, the same woman who was suspected of abusing the children, called to confirm the visit. The respondent failed to appear for that visit. O'Connor sent him a letter the following day, reiterating the importance of his remaining in contact with DCYF, and the importance of visiting with the children. O'Connor did not hear from the father again. In an effort to locate respondent, she sent out a series of "search letters." [3] At the end of February 1998, after O'Connor had not seen nor heard from respondent since July 24, 1996, the case was transferred to yet another social worker. The respondent had made no attempt to arrange visitation with his children since July 10, 1996.[4] DCYF filed a petition to terminate the father's parental rights for both his children on May 1, 1998, citing abandonment as the grounds for the petition.

After hearing the evidence presented at trial, the trial justice found that, for a period of approximately twenty-two months, despite numerous attempts by DCYF social workers, the father made no effort to contact DCYF or visit with his children, with the exception of three unsupervised and unauthorized visits while the children were in the care of their mother. Further, the trial justice found that the father failed to demonstrate any consistent interest or concern for these children during that same period. For these reasons, and others enumerated in his decision, the trial justice found that respondent had abandoned his children, pursuant to § 15–7–7(a)(4). The respondent has appealed.

On appeal, respondent asserted that DCYF failed to make reasonable efforts to provide him with appropriate services aimed at reunifying him with his children. He also maintained that he did not abandon his children because his failure to see his children for a period greater than six months was not "willful." We deem these arguments to be without merit.

■■■■ We are satisfied that there is ample evidence in the record to support the trial justice's finding of abandonment. Significantly, substantial periods elapsed during which respondent had no contact with his children. Contrary to respondent's contention, the statute upon which DCYF relies, § 15–7–7(a)(4), does not include the element of willfulness to show abandonment. Section 15–7–7(a)(4) provides in pertinent part:

"A lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion. In the event that parents of an infant have had no contact or communication with the infant for a period of six (6) months the department shall file a petition pursuant to this section and the family court shall conduct expedited hearings on such petition."

---

3. O'Connor explained that search letters are a series of letters that go to the police station, the Registry of Motor Vehicles, the post office, the gas and electric companies and last known addresses, all in an effort to locate the parent.

4. There is evidence in the record indicating that the father claims to have visited the children three times in June of 1997, all while the children were in the custody of the mother.

The father did not visit, nor did he attempt to visit or contact his children for a period of twenty-two months, which is *prima facie* evidence of abandonment under the statute.[5] The father made no effort to explain or excuse his absence. Although DCYF workers made valiant efforts to contact him and reunify him with his children, such efforts proved fruitless. Pursuant to § 15–7–7(b)(1), "the department has no obligation to engage in reasonable efforts to preserve and reunify a family," in the event that a petition to terminate parental rights is filed pursuant to § 15–7–7(a)(4). We are satisfied that although not required reasonable efforts at reunification were made in this case and that the finding of abandonment was appropriate and supported by the evidence.

Accordingly, the respondent's appeal is denied and dismissed. The decree of the Family Court ordering the termination of the father's parental rights is affirmed and the papers in this case are remanded to the Family Court.

---

5. Although respondent claims to have visited the children three times in June 1997, it is clear he did not see or attempt to see them from July 1997 through the time when the petition to terminate his parental rights was filed in May 1998. This ten-month span alone satisfies the six month statutory time limit for an abandonment case.