**In re Shanelly C.**

**No. 2000–352–APPEAL.**

Supreme Court of Rhode Island.

Dec. 7, 2001.

Frank P. Iacono, Jr./Thomas J. Corrigan, Jr., for Plaintiff.

Catherine A. Gibran, Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on October 30, 2001, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. The respondent-mother, Florencia Hernandez (mother or respondent), has appealed from a Family Court decree terminating her parental rights to her child, Shanelly,[1] on the grounds of abandonment, pursuant to G.L.1956 § 15-7-7(a)(4).[2] After hearing the arguments of counsel and considering the memoranda submitted by the parties, this Court is of the opinion that cause has not been shown. Therefore, this appeal will be decided summarily.

When reviewing a judgment of the Family Court terminating parental rights, this Court examines the record to determine whether the findings of the trial justice are supported by legally competent evidence. *In re Jennifer R.*, 667 A.2d 535, 536 (R.I.1995); *In re Rene B.*, 544 A.2d 137, 140 (R.I.1988). These findings are entitled to great weight and will not be disturbed on appeal unless the trial justice was clearly wrong or he or she misconceived or overlooked material evidence. *In re Christina V.*, 749 A.2d 1105, 1111

1. The parental rights of the father, Nestor Chevalier, were terminated on October 16, 1995; Chevalier did not appeal.

2. At the time of the filing of the termination of parental rights petition, G.L.1956 § 15-7-7(a)(4) provided that:
   "The parent has abandoned or deserted the child. A lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion. In the event that parents of an infant have had no contact or communication with the infant for a period of six (6) months, the department shall file a petition pursuant to this section and the family court shall conduct expedited hearings on the petition."

(R.I.2000)(per curiam); *In re Kristen B.,* 558 A.2d 200, 204 (R.I.1989).

Shanelly came into the care of the Department of Children, Youth, and Families (DCYF or Department) on July 1, 1994,[3] pursuant to a Family Court ex-parte detention order arising from an investigation of allegations of child abuse by mother. Shanelly was committed to the care, custody and control of DCYF on May 3, 1995, after she was found to have been abused by her mother, who beat Shanelly with an extension cord over her legs, back and shoulders. The petition for termination of parental rights, pursuant to § 15–7–7(a)(4), was filed on July 6, 1999, almost five years after Shanelly came into the Department's care. During this five-year period, DCYF provided mother with individual counseling, parenting classes, a psychiatric evaluation, parent-child assessments and biweekly visitation with her child. Although she participated in some of the offered services, she failed to complete any of the three reunification case plans developed by DCYF.

■ Initially, mother complied with the biweekly supervised visitation schedule established by the Department. However, in September 1998, she refused to continue her visits with Shanelly because DCYF insisted on either the use of the English language during visitation or, if mother persisted in speaking to her daughter only in Spanish, then the visitation would occur with an interpreter present. Mother refused to comply with this requirement and, in December 1998, she walked out of a scheduled visit. She had no further contact with Shanelly in person or through letters or phone calls after December 1998. When asked by the trial justice why it was so important that she and her daughter

speak Spanish, even when faced with a denial of visitation, she had "no answer." The court found that, of the eight years of Shanelly's life, mother had no contact with her daughter for more than an entire year.

■ Section 15–7–7(a)(4) provides that an abandonment of the parent-child relationship occurs when there is a lack of communication or contact with the child for at least six months.[4] Such lack of communication does not have to be willful on the part of the parent. *In re Craig G.,* 765 A.2d 1200, 1202 (R.I.2001). Failure to visit or contact, or attempt to visit or contact, the child during this statutory period, constitutes *prima facie* evidence of abandonment. *Id.* at 1203. Additionally, "[if] * * * a petition to terminate parental rights is filed pursuant to § 15–7–7(a)(4)" (abandonment), *Craig G.,* 765 A.2d at 1203, § 15–7–7(b)(1) absolves DCYF of the obligation to make further "'reasonable efforts to preserve and reunify a family.'" *Craig G.,* 765 A.2d at 1203. We have previously held "that the parent, not DCYF, whose children are in the care of an authorized agency is responsible to substantially and repeatedly maintain contact with the children." *In re Devone S.,* 777 A.2d 1268, 1272 (R.I.2001). Here, mother's blatant refusal to visit her daughter unless she could control the environment speaks to her unfitness as a parent. The trial justice, therefore, correctly found, by clear and convincing evidence, that mother abandoned her child, and did so "cold-bloodedly." There is no indication that the trial justice misconceived or overlooked material evidence. The finding of abandonment was, therefore, supported by the evidence and is affirmed.

3. Shanelly was born on February 20, 1992.

4. As noted by the trial justice, there was no contention that DCYF did not have care and custody of Shanelly for the statutory period.

Mother argued to the Supreme Court that she remained in contact with Shanelly by sending some clothing, books and candy to her through DCYF. This "contact," however, does not satisfy § 15–7–7(a)(4); it is, at best, indirect contact indicative of an unwillingness to promote and further the parent-child relationship. Meaningful contact between a parent and child is not satisfied by dropping off books and candy to a social worker. The mother was residing locally and certainly was available to visit this child; she refused, however, to comply with DCYF's requirement that the worker responsible for supervising the visitation be able to observe and understand the interaction between mother and child. The quality of the communications between a parent and child is an integral part of supervised visitation because DCYF is obliged to report this interaction to the Family Court. We note that supervised visitation was ordered in this case because Shanelly suffered serious abuse at the hands of her mother. Thus, the requirement that English be spoken, or an interpreter be present, was a reasonable and necessary condition. The respondent's flagrant refusal to comply with this requirement was unexplained and unjustified and certainly not in the child's best interest.

Additionally, the record demonstrates that Shanelly has not visited with her mother in three years, has not lived with her mother since age two, and does not wish to do so now. We cannot disregard the bond Shanelly has formed with loving foster parents in a pre-adoptive home. We are satisfied that the child's best interests require that she remain with her foster family and that mother's rights be terminated.

Accordingly, the respondent's appeal is denied and dismissed. The decree of the Family Court is affirmed and the papers in this case are remanded to the Family Court.