**TOWN OF NORTH KINGSTOWN**

v.

**Gerry ALBERT et al.**

**No. 99–211–Appeal.**

Supreme Court of Rhode Island.

March 6, 2001.

A. Lauriston Parks, Jamestown, for Plaintiff.

John J. Kupa, Jr., North Kingstown, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Court on appeal from a final judgment of the Superior Court entered in favor of Gerry and Susan Albert (the Alberts or defendants) by the Town of North Kingstown (town or plaintiff). The town has asserted that the trial justice erred in denying its request to permanently enjoin defendants from completing excavation on their property to create an irrigation pond designed to provide an adequate water supply to their seventy-acre turf farm. We affirm.

### Facts and Procedural History

The following facts are not in dispute. The Alberts own and operate a turf farm in the town. This property has been devoted to agriculture for forty years. Pursuant to the zoning ordinance of the Town of North Kingstown (zoning ordinance) the farm is located in a "Rural Residential Zoning District" (RR District). The zoning ordinance provides a listing of permitted and prohibited uses for each zoning district. Although Article III of the zoning ordinance permits "Agricultural and Crop Farming" in an RR District, "Earth Removal" is a prohibited use.

On or about June 8, 1998, the Alberts began developing an irrigation pond on the premises without obtaining a soil and earth removal license from the town. On November 24, 1998, John H. Lees, the town's building official, caused a notice of violation and stop work order to be served upon defendants. From this point, this dispute becomes murkier.

As with most agricultural operations, irrigation is an absolute necessity for crop viability. This is especially true with respect to a turf farm, which requires a tremendous amount of water to sustain the vegetation. Specifically, to prevent the grass from becoming dormant and dying, a turf crop requires one inch of water every seven days. Given the volume of water necessary to maintain the turf, an inexpensive water source is critical. The Alberts have sought to develop an inexpensive and reliable irrigation supply for many years. Although they constructed a well, it ultimately was incapable of providing an adequate supply of water. During the 1980s, the town denied the Alberts access to a public water supply line because of a water pressure problem. Finally, in 1992, the Alberts applied to the Department of Environmental Management (DEM) for permission to construct an irrigation pond.[1]

In 1993, estimating that they would have to spend up to ten thousand dollars for water with no assurance of adequate water pressure, the Alberts decided to focus their energy and money toward developing an irrigation pond on their property, even though it would require them to sacrifice available agricultural land. The Alberts hired an engineer to draw plans for the pond. The plans were reviewed by the chief of DEM's agriculture division and the United States Soil Conservation Service. The Alberts also met with the town planner and presented the plans to her, but, the planner indicated after their meeting that she wanted the town engineers to review the plans. Neither the planner nor the engineer ever contacted the Alberts again.

On June 8, 1998, the Alberts began excavation for an irrigation pond. Ancillary to the excavation and to avoid stockpiling the excess earth on usable farm area, the Alberts sold the valuable loam to the excavators.[2] Contrary to the position of the town, the Alberts maintained they never

intended to turn the project into a sand and gravel operation.

In August 1998, the town manager and zoning inspector contacted the Alberts about complaints concerning dust that was originating from the farm. At this time, the town manager also questioned the Alberts about the pond excavation project. The Alberts asserted that the dust was the result of high winds during seeding, while the town avers that the excavation of the pond was the cause of the dust. The trial justice made no finding about the source of the dust.

On November 24, 1998, the town issued a notice of violation and stop work order concerning the excavation project. The Alberts ceased operations for one day, but resumed the project the next day after consultation with counsel. The town then filed a complaint in Superior Court seeking to restrain the excavation and a mandatory injunction to restore the premises.

Following a hearing in Washington County Superior Court, a bench decision was issued on January 19, 1999 denying the town's claims for relief. The trial justice found that the irrigation pond was developed to service a turf farm, and, unless the pond was developed, the farm operation would be threatened by a lack of sufficient water. The trial justice acknowledged that the Alberts had investigated other sources of irrigation and concluded that the irrigation pond was their only viable alternative. The trial justice also found, referring to G.L.1956 chapter 23 of title 2, The Right to Farm Act (Farm Act), that prohibition of the pond "would have an adverse affect on defendant's farming operation and would be adverse to the policy of the Legislature to encourage farming operations." The trial justice found that the earth removal resulting from the excavation was "merely incidental to the farming operation," and not "for the purpose of converting [the loam] into sala-

---

1. DEM took no action on the application because a wetlands permit was not necessary.

2. These transactions were separate and distinct from the excavation service contract.

ble commodities." In conclusion, the trial justice held,

"[a]pplying the earth removal ordinance to the instant case is contrary to legislative intent of safeguarding and encouraging farm operations. It is contrary to defendants right to use a portion of their land which is customarily incidental and subordinate to the principal use of the land."

An order was entered in accordance with the bench decision and on March 23, 1999, the trial justice granted the town's motion for entry of final judgment. A timely appeal from that judgment was taken to this Court.

As grounds for its appeal, the town raised two issues relative to an interpretation and application of the town's soil and earth removal ordinance (removal ordinance) and the zoning ordinance to the farm in light of the Farm Act. The town argued that these ordinances are unambiguous, and thus, the town is entitled to injunctive relief from the Alberts "extensive earth removal." The town also asserted that the Farm Act is limited to nuisance actions, and as such, does not invalidate the removal ordinance nor create any ambiguity. Further, the town argued that earth removal cannot be classified as a permissible accessory use to farming when it occurs in a zoning district where it is prohibited.

## Standard of Review

■ This Court has consistently held that "[t]he decision to grant or deny an injunction is a matter within the sound discretion of the trial court." *Paramount Office Supply Co. v. D.A. MacIsaac, Inc.,* 524 A.2d 1099, 1101 (R.I.1987). "Only when the trial court clearly abuses its discretion will this court reverse a decision denying a request for temporary or permanent injunctive relief." *Pawtucket Teachers Alliance v. Brady,* 556 A.2d 556, 557 (R.I.1989).

■ However, questions implicating statutory interpretation are questions of law and are therefore, reviewed *de novo* by this Court. *See Palazzolo v. State ex rel. Tavares,* 746 A.2d 707, 711 (R.I.2000); *see also Fitzpatrick v. Tri–Mar Industries, Inc.,* 723 A.2d 285, 286 (R.I.1999). When interpreting an ordinance this Court applies the same rules of construction that are applied for statutes. *Mongony v. Bevilacqua,* 432 A.2d 661, 663 (R.I.1981). When confronted with statutory provisions that are unclear or ambiguous, we examine the statutes in their entirety in order to glean the intent and purpose of the Legislature. *In re Advisory to the Governor (Judicial Nominating Commission),* 668 A.2d 1246, 1248 (R.I.1996). Moreover, in interpreting a legislative enactment, it is incumbent upon us "to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987) (citing *Gryguc v. Bendick,* 510 A.2d 937, 939 (R.I.1986)). "In so doing, '[t]his Court will not construe a statute to reach an absurd result.'" *State v. Flores,* 714 A.2d 581, 583 (R.I.1998) (quoting *Kaya v. Partington,* 681 A.2d 256, 261 (R.I.1996)). To resolve this dispute, we must clarify the interplay between the removal ordinance, the zoning ordinance, the Farm Act and the Alberts' right to provide irrigation to their agricultural operation.

## Discussion

### I

### Town of North Kingstown Removal and Zoning Ordinances

■ In 1973, the Legislature granted enabling authority to the town to enact ordinances regulating sand and gravel operations in residential zones or any other area of the town where such activity would have an adverse impact on neighboring land areas. *See* P.L.1973, ch. 130. Pursuant to this grant of power, the town enact-

ed the Soil and Earth Removal Ordinance.[3] The ordinance sets forth the definition of "earth removal" as "the extraction or removal of any sand, gravel, loam, topsoil, stone, clay or shale from deposits on any tract of land * * *." North Kingstown Revised Ordinances ch. 16, § 16–2(a). In addition, the removal ordinance sets forth four enumerated exclusions for earth removal involved in the process of grading land. Included is an exclusion "[f]or the removal of less than twenty (20) cubic yards over a period of one (1) year from any single parcel of land recorded as such."[4] Id. at § 16–2(a)(4). Further, for those removal projects that do not fall within the enumerated exceptions, the removal ordinance contains a licensing procedure[5] and a variance provision,[6] neither of which are of any assistance to the Alberts because of the town's interpretation that the zoning ordinance precludes the licensing of any earth-removal project like this one in this type of zoning district. Under the removal ordinance, any individual who proposes an earth removal project, excluding those enumerated exceptions, must comply with either the licensing or variance requirements of the town.

The town's zoning ordinance sets forth the permitted and prohibited uses for the various zoning districts under which the Alberts' seventy-acre turf farm is classified as an RR District. According to Article III of the North Kingstown Revised Ordinances, the Land Use Table, "earth removal" is a prohibited use in RR Districts. Although not expressly prohibited use in RR Districts, Article III provides that "[a]ny use not expressly permitted by this ordinance shall be deemed to be prohibited."[7]

Significantly, neither party has disputed that Article III of the zoning ordinance prohibits "earth removal" in RR Districts. Notwithstanding this prohibition, the town asserted that the Alberts should have applied for a license rather than beginning the project absent such approval. In practice however, the town's argument would merely amount to an exercise in futility. Although the removal ordinance allows for a license or variance under certain hardship circumstances, the zoning ordinance expressly prohibits earth removal in RR Districts. The result, which the town acknowledged during oral argument, is that the Alberts could not have obtained a license under the removal ordinance because a license is not available for an expressly prohibited zoning use. The town's argument thus embraces the formality of applying for a license, fully aware that in the end the Alberts would be no better off than when they began, less the loss of time and expense necessary to apply and appeal the denial of a preordained result.

---

3. In essence, the language of the town ordinance mirrors the language provided in P.L. 1973 ch. 130.

4. The defendants convincingly asserted to the Court that in sustaining normal operations of the farm, significantly more than twenty cubic yards of earth must be removed from the farm when removing turf to satisfy its customer's orders. In response, the town stated that although this volume of extraction is a clear violation, the town would tend to ignore the violation until complaints are received. North Kingstown Revised Ordinances ch. 16, § 16–2(a)(4).

5. North Kingstown Revised Ordinances ch. 16, § 16–4(e), Licensing procedures, provides: "As a condition precedent to any earth removal as defined in this chapter a license to be issued by the building official shall be obtained upon submission of the required documents and upon his approval thereof and the payment of a license fee in accordance with section 9–4, Table III."

6. North Kingstown Revised Ordinances ch. 16, § 16–5, Variances, provides: "Upon special application and after a showing that the literal enforcement of this chapter will work a hardship, the zoning board of review may grant an exception to any terms of such earth removal article upon finding that such exception will not result in a substantial depreciation of surrounding property."

7. See North Kingstown Revised Ordinances Article III, Land Use Table.

Further, the town argued that the Alberts' excavation "clearly fits the literal description of earth removal in the Soil and Earth Removal ordinance," and thus, as an expressly prohibited use, the Alberts' excavation cannot be classified as an accessory use in an RR District. Although we agree, as did the trial justice, that the Alberts' excavation extracted soil in the literal sense,[8] we do not construe such a removal a "use" that is implicated by either the removal or zoning ordinances. The zoning ordinance defines "use" as "[t]he purpose or activity for which land or buildings are designed, arranged, or intended, or for which land or buildings are occupied or maintained."[9] G.L.1956 § 45–24–31(60). In light of this definition, the town's construction of this ordinance implicates the extraction of *any* earth as a *use* and not an incidental activity. We are of the opinion that this interpretation is overly broad and would serve to create an absurd result. Rather, we interpret earth removal in the context of these ordinances, to apply to those land use operations intended to extract valuable deposits for commercial sale, such as a quarry or a sand and gravel business. The Alberts' excavation project was not the primary purpose of the turf farm, nor are the Alberts in the sand and gravel business. They are farmers. It is uncontradicted that the purpose of the Alberts' turf farm is to cultivate, harvest and market turf. It was only in connection with the excavation of the pond that the Alberts contracted with the excavator for the sale and removal of the loam so as to avoid stockpiling it on valuable farm land. We are satisfied

that this temporary arrangement did not rise to the level of a commercial use or sale within the meaning of the undefined term "earth removal" in the zoning ordinance. The sale of the extracted earth was temporary and incidental to the creation of the pond, and the creation of the pond was an incidental, and essential activity to the farming operation. The excavation project does not constitute the primary purpose of the Alberts' land, and thus, we are of the opinion that the project and related earth removal does not constitute a "use" under the zoning ordinance. The use of this land is agricultural; the irrigation pond is a necessary and accessory use to the farming operation; and therefore, does not fall within the purview of the zoning ordinance. Although the town could have applied the removal ordinance to the excavation project (or at least those portions that would be applicable to the creation of an irrigated pond) and required the Alberts to apply for and obtain a license before proceeding with that project,[10] it took the position at oral argument—erroneously, we hold— that no such license could issue for this project under the removal ordinance because the zoning ordinance forbade the excavation project in an RR district. Thus, any application for a license filed by the Alberts would have been denied on the basis of noncompliance with applicable zoning. However, we are of the opinion that in the future the town can apply its removal ordinance to proposed excavation projects like this one, provided it cannot arbitrarily deny a license for such projects in an RR district solely because of non-

8. We note however, and the town did not dispute during oral argument, that the Alberts' turf farm operation also removes significantly more than the allotted twenty cubic yards of earth per year during the normal turf farming operations.

9. The definition of "use" contained in the zoning ordinance is identical to the definition contained in G.L.1956 § 45–24–31(60) of the Rhode Island Zoning Enabling Act of 1991. *See* North Kingstown Revised Ordinances ch. 21, § 21–22.

10. As noted earlier, the Alberts did hire an engineer to draw plans for the pond, had the chief of DEM's agricultural division and the United States Soil Conservation Service review those plans, and presented the plans to the town planner. However, despite the town planner's indication that the town engineers would review the plans, neither she nor the engineers ever contacted the Alberts.

compliance with the zoning ordinance, particularly where the project relates to an incidental activity, here farming.

## II

### The Rhode Island Right to Farm Act

■ The Right to Farm Act represents a legislative determination that the state's remaining agrarian land should be preserved and protected to the extent possible, to remain in farming and be "safeguarded against nuisance actions arising out of conflicts between agricultural operations and urban land uses." Section 2–23–3. The town asserted that the Farm Act is limited to the prohibition or elimination of litigation arising from nuisance complaints against agricultural activities that conflict with the full enjoyment of surrounding residential property. However, we note that this case arose from a series of complaints about excessive dust emanating from the turf farm by neighboring landowners. Certainly, these complaints fall within § 2–23–5(a)(3), which specifically exempts "[d]ust created during plowing or cultivation operations" from becoming either a private or public nuisance. Although we agree with the town that the Farm Act is applicable to nuisance actions, we are cognizant that the statute is a statement of policy by the Legislature that farming activities and activities incidental to the right to farm ought not to be arbitrarily prohibited on the ground that the activity is objectionable on the ground of nuisance to either surrounding landowners or the municipality where the farm is located. Certainly, the town's interpretation of the removal and zoning ordinance is in direct conflict with the Alberts' right to continue to farm this parcel.

The removal ordinance in question, however, was enacted in order to promote the public health, safety and general welfare of the town, and not only provides for the licensing of any earth removal operation, but also includes a series of regulations clearly designed to prevent any adverse condition arising from the activity from migrating onto neighboring land or the town's roadways and thus creating a nuisance. According to the town's interpretation of its zoning ordinance, the Alberts were completely precluded from creating an irrigation pond on their farm at any time. Significantly, given this interpretation there was no available avenue of relief contained in the ordinances of the town, notwithstanding the finding of the trial justice that irrigation of the crops and an irrigation pond is essential for the continued vitality of the turf farm. We deem this to be potentially fatal to Alberts' long-standing agricultural operation at this location and in conflict with the policy of this state to encourage the continued viability of the state's remaining farming operations. Therefore, we are of the opinion that this legislative scheme, designed to prevent the creation of nuisances, must be interpreted so as to not seriously infringe on ordinary farming operations within the town.

### Conclusion

Based upon the foregoing, we are satisfied that the trial justice was acting within her discretion in denying injunctive relief to the Town of North Kingstown. We are of the opinion that, given the town's interpretation of these ordinances, it would have been impossible for the defendants to comply with the requirements of both the removal and zoning ordinances and supply water to their crops. Therefore, we conclude that the irrigation pond is an accessory and essential use to the Alberts' farming operation. We further conclude that this excavation project did not constitute a "use" under the zoning ordinance, and thus, was not subject to the ban on earth removal use in RR districts, as specified therein. Further, having taken the erroneous position that the project could not obtain a license under the removal ordinance because it was a forbidden use in an RR zoning district, the town cannot now apply the removal ordinance to the project after it has been completed.

For the reasons set forth herein, the town's appeal is denied and dismissed. The judgment is affirmed and the papers in this case are remanded to the Superior Court.

Chief Justice Williams did not participate at the hearing or on the decision.