**In re ABBY D.**

**No. 2003–21 Appeal.**

Supreme Court of Rhode Island.

Jan. 14, 2004.

Carl DeLuca, Esq., Providence, for Plaintiff.

Paula Rosin, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, and FLAHERTY JJ.

## OPINION

### PER CURIAM.

The respondent-father, Joseph Doucette (respondent), appeals from a Family Court decree granting the adoption petition of Abby D.'s (Abby) natural mother, Tammy Macchio (Tammy), and maternal grandfather, Anthony Macchio (Anthony)[1] and terminating the respondent's parental rights to Abby. This case came before the Supreme Court for oral argument on October 29, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons indicated herein, we affirm the Family Court decree.

## I

### Facts and Travel

Tammy and respondent are Abby's natural parents. Since Abby's birth in 1996, Tammy and Abby have lived with Tammy's parents, Anthony and Mrs. Macchio[2] (collectively referred to as the Macchios). The respondent did not reside with the Macchios, but he regularly visited Abby in the Macchio family home. The respondent, however, stopped visiting Abby soon after he and Tammy broke up in December 1997. After the breakup, respondent called the Macchio home several times during the rest of December, but none of these phone calls resulted in a visit with his daughter. The respondent's attempts to contact Abby ended by early 1998.

At a hearing in December 1998, the Family Court awarded Tammy sole custody of Abby. In November 2001, Tammy and Anthony filed a joint petition for adoption pursuant to G.L.1956 § 15–7–5(b),[3] which the Family Court granted. The respondent appeals from the Family Court's decree granting the adoption petition and terminating his parental rights.

## II

### Section 15–7–5(b)

◼ Section 15–7–5(b) provides that a natural, custodial parent's spouse or the child's grandparent may file an adoption petition with the consent of a natural, custodial parent.[4] The statute further pro-

---

1. This Court means no disrespect by using the parties' first names. We use Ms. Macchio and Mr. Macchio's first names only to avoid confusion.

2. Mrs. Macchio's first name was not given in the trial court record.

3. General Laws 1956 § 15–7–5(b) allows the filing of an adoption petition "when the petitioners are one of the natural parents of the child and his or her spouse or one of the grandparents of the child * * *." This statute exists to enable a stepparent or grandparent to file an adoption petition and become a

co-parent along with a natural, custodial parent. To do this, the stepparent or grandparent must obtain the consent of that natural, custodial parent. Pursuant to the statute, the custodial parent expresses this consent by joining the petition. Tammy, therefore, is not petitioning to adopt Abby. Instead, she is simply lending her consent and support to Anthony's quest to become Abby's adoptive father.

4. Section 15–7–5(b) provides in pertinent part that:

"(1) * * * when the petitioners are one of the natural parents of the child *and* his or her spouse *or* one of the grandparents of

vides that, if the non-custodial natural parent refuses to consent to the adoption, then the Family Court may terminate that parent's rights upon any of the grounds set out in § 15–7–7. The threshold question in this case is whether, pursuant to § 15–7–5(b), Anthony and Tammy are permitted to file a joint petition to adopt Abby.

 Questions of statutory interpretation are reviewed *de novo* by this Court. *Martone v. Johnston School Committee*, 824 A.2d 426, 431 (R.I.2003). "When interpreting a statute, our ultimate goal is to give effect to the General Assembly's intent. The best evidence of such intent is the plain language used in the statute. Thus, a clear and unambiguous statute will be literally construed." *Id.* When a statute is unclear or ambiguous, however, this Court will glean the legislative intent " 'from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement' of the provisions to be construed." *Mottola v. Cirello*, 789 A.2d 421, 423 (R.I.2002) (quoting *State v. DiCicco*, 707 A.2d 251, 253 n. 1 (R.I. 1998)). Moreover, this Court will not construe a statute in a way that will lead to an absurd result. *State v. Burke*, 811 A.2d 1158, 1167 (R.I.2002) (citing *Town of North Kingstown v. Albert*, 767 A.2d 659, 662 (R.I.2001)).

Section 15–7–5(b) provides that certain people may file an adoption petition "when the *petitioners* are one of the natural parents of the child and his or her spouse or one of the grandparents of the child and the child is residing, at the time the petition is filed, with the *petitioners* * * *." (Emphasis added.) The repeated use of the plural "petitioners" in 15–7–5(b) clearly indicates that the General Assembly envisioned two parties joining in the filing of an adoption petition under the statute. Under the express language of the statute, one of the parties to the petition must be a natural parent.

Section 15–7–5(b) then goes on to identify the appropriate additional parties to the petition. In this section of the statute, the words "natural parent[] of the child" are followed by the word "and." The phrases that follow, which are "his or her spouse" and "one of the grandparents of the child," are separated by the word "or." *Id.* Black's defines "and" as "[a] conjunction connecting words or phrases expressing the idea that the latter is to be added to or taken along with the first." Black's Law Dictionary 79 (5th ed.1979). Black's further defines "or" as "[a] disjunctive particle used to express an alternative or to give a choice of one among two or more things." *Id.* at 987. Thus, the conjunction "and" connects the required party to the petition, "natural parent[] of the child," with additional parties to the petition— "his or her spouse or one of the grandparents of the child." Therefore, according to the plain language of 15–7–5, a natural parent may file a petition in combination

the child and the child is residing, at the time the petition is filed, with the petitioners, if the noncustodial parent refused to consent to the adoption, the court shall determine whether the noncustodial parent's rights shall be terminated involuntarily. In making the determination, the court shall apply the grounds for termination of parental rights set forth in 15–7–7 * * *."

"(2) Notwithstanding the provisions of subdivision (1) of this subsection, when the petitioners are one of the natural parents of the child *and* his or her spouse *or* one of the grandparents of the child and the child is residing, at the time the petition is filed, with the petitioners, and if the noncustodial parent refuses to consent to the adoption, then the court may grant the petition without a noncustodial parent's consent if the petitioners prove by clear and convincing evidence any of the grounds set forth in 15–7–7(a)(1), (2), or (4)." (Emphasis added.)

with either his or her spouse or a grandparent of the adopted child.

Conversely, the respondent asserts that the parties who may bring an adoption petition under 15–7–5 are the spouse of a natural, custodial parent with permission of that parent, or, in limited situations, a grandparent alone. According to respondent's interpretation of the statute, a grandparent may adopt on his or her own but may not do so if the child lives with a natural, custodial parent, even with that parent's consent. This Court will not countenance such an absurd interpretation of the adoption statute. *Burke*, 811 A.2d at 1167.

The respondent also contends that adoption by a grandparent when one natural parent retains full custody will create an uncomfortable, confusing situation for the child. Furthermore, respondent argues that if this Court allows a natural parent and a grandparent to petition for adoption under 15–7–5 then the statute could be exploited to fraudulently relieve a non-custodial parent of his or her parental rights. We disagree. First, by enacting this statute the General Assembly expressed its view that adoption by a grandparent when a natural parent retains full custody neither will create an uncomfortable situation for the child nor invite exploitation. Moreover, this Court does not believe that 15–7–5 is open to exploitation. An adoption cannot take place unless the non-custodial natural parent consents or his or her rights are terminated for cause. Therefore, we are not concerned that the rights of a worthy parent could be fraudulently terminated pursuant to the statute. Because the General Assembly has specifically provided for this type of adoption, we will not disturb that policy on appeal. Based on its express language, we hold that 15–7–5(b) does permit Anthony and Tammy to file the adoption petition jointly.

Having concluded that this adoption petition was filed properly, we consider whether respondent's parental rights were terminated properly.

## III

### Section 15–7–7(a)(4)

"When reviewing cases involving the termination of parental rights, this Court examines the record to determine whether legally competent evidence exists to support the trial justice's findings." *In re Chester J.*, 754 A.2d 772, 776 (R.I.2000). "Such findings are entitled to great weight, and this Court will not disturb them on appeal unless the findings are clearly wrong or the trial justice misconceived or overlooked material evidence." *Id.* (quoting *In re Ryan S.*, 728 A.2d 454, 457 (R.I.1999)).

Under § 15–7–5(b)(1), the Family Court may grant the petition of Tammy and Anthony to adopt Abby over respondent's objection if there are grounds to terminate respondent's parental rights under § 15–7–7. Pursuant to § 15–7–7(a)(4):

"The court shall * * * terminate any and all legal rights of [a] parent to [a] child * * * if the court finds as a fact by clear and convincing evidence that: * * * (4) The parent has abandoned or deserted the child. A lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion."

This Court has stated it has no tolerance for a parent "who makes halfhearted or no attempts to visit or contact his or her child within the six-month statutory time period * * *." *In re DeKarri P.*, 787 A.2d 1170, 1172 (R.I.2001) (per curiam). This Court has also specifically held that "§ 15–7–7(a)(4) does not include the element of willfulness to show abandonment." *In re Craig G.*, 765 A.2d 1200, 1202 (R.I.2001).

In determining that respondent statutorily abandoned Abby pursuant to § 15–7–7(a)(4), the Family Court justice found that respondent had not visited Abby between December 1997 and the October 2002 adoption hearing. Other than the phone calls respondent made to the Macchio home, which were as few as two and as many as five, he did not attempt to communicate with Abby after December 1997. The respondent's few phone calls to the Macchio home and failure to visit Abby between December 1997 and the 2002 adoption hearing call out for the application of § 15–7–7(a)(4). Thus, pursuant to the terms of that statute, respondent's behavior constitutes "[a] lack of communication or contact with the child for at least a six (6) month period" and is therefore "prima facie evidence of abandonment or desertion." Section 15–7–7(a)(4).

The respondent gives a variety of explanations for his failure to communicate with or contact Abby since December 1997. For example, the respondent alleges that Mrs. Macchio was hostile toward him during his phone calls to the Macchio home in December 1997. Because § 15–7–7(a)(4) does not "include the element of willfulness," *In re Craig G.*, 765 A.2d at 1202, the respondent's explanations do not excuse his lack of communication, and we sustain the Family Court justice's finding that the respondent abandoned Abby pursuant to § 15–7–7(a)(4).

## Conclusion

The decree of the Family Court granting the adoption petition and terminating the respondent's parental rights is affirmed. The papers in this case shall be remanded to the Family Court.

Justice SUTTELL did not participate.