### In re SHAWN B. et al.[1]

No. 2002–703–Appeal.

Supreme Court of Rhode Island.

Jan. 21, 2005.

---

1. Shawn reached the age of maturity after this case was heard in the Family Court but before the appeal reached us. *See* G.L.1956 § 15–12–1. This opinion, then, relates only to Shawn's younger brother, Brandon, who will turn eighteen in November 2005.

Frank P. Iacono, Jr. (CASA), Thomas J. Corrigan, Jr. (DCYF), for Plaintiffs.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The respondent-father, Thomas C. Johnson (respondent), appeals from a Family Court decree terminating his parental rights to two sons, Shawn and Brandon.[2] At the Family Court's behest, the Department of Children, Youth and Families (DCYF) filed a petition to terminate parental rights (TPR petition) after the children's legal guardians sought to adopt them.[3] After a trial justice granted DCYF's petition, the respondent appealed to this Court.

This case came before the Supreme Court for oral argument on November 30, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and proceed to decide the appeal at this time. For the reasons indicated herein, we affirm the judgment of the Family Court.

## I

### Facts and Travel

Shawn and Brandon have not lived with respondent since July 31, 1992, the night

---

2. Shawn was born on January 20, 1986; Brandon was born on November 5, 1987. Although respondent's name does not appear on either of the children's birth certificates, paternity is not in question.

3. It was disclosed at oral arguments that although the prospective adoptive parents currently are going through a divorce and no longer intend to adopt either Brandon or Shawn, Brandon still would like his father's parental rights terminated.

he murdered their mother. The children were sent to live with relatives initially but then moved in with David and Karen Wyman's family (collectively the Wymans), where they have been living ever since.[4] After a jury found respondent guilty of murder, he was sentenced to life at the Adult Correctional Institutions (ACI). The children have had no contact with their father since he was incarcerated.

In 2001, the Wymans filed petitions with the Family Court seeking to adopt the children they had been raising as their own for years. The Family Court justice who first heard the case (first justice) ordered DCYF to file an involuntary TPR petition so respondent would be afforded legal counsel in the matter. At the subsequent trial, a second Family Court justice (second justice) heard testimony from Shawn and a DCYF social worker. A decree was then issued terminating respondent's parental rights on the grounds he abandoned the children by virtue of his incarceration and that he was unfit due to cruel and abusive conduct demonstrated by the murder of the children's mother. The respondent appealed to this Court on several grounds.

## II

### Analysis

■ This Court reviews appeals from TPR rulings by examining the record to establish whether the hearing justice's findings are supported by legally competent evidence. *In re Abby D.*, 839 A.2d 1222, 1225 (R.I.2004). The trial justice's findings " 'are entitled to great weight, and this Court will not disturb them on appeal unless the findings are clearly wrong or

the trial justice misconceived or overlooked material evidence.'" *Id.* (quoting *In re Chester J.*, 754 A.2d 772, 776 (R.I. 2000)).

■ The respondent first argues the Family Court erred in finding that he abandoned his children because, despite his efforts to see the children, DCYF never attempted to schedule a visit. The TPR statute provides that "lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion." G.L.1956 § 15–7–7(a)(4). Section 15–7–7(b)(1) states that when a TPR petition is filed on the basis of abandonment or cruel or abusive conduct, "the department has no obligation to engage in reasonable efforts to preserve and reunify a family." It is well settled that "the parent, not DCYF, whose children are in the care of an authorized agency * * * is responsible to substantially and repeatedly maintain contact with the children," even when the parent is incarcerated. *In re Diamond I.*, 797 A.2d 1076, 1078 (R.I.2002) (mem.).

■ The respondent presented no evidence either at the trial or on appeal that he ever attempted to contact his children. A parent who makes only "halfhearted or no attempts to visit or contact his or her child within the six-month statutory period" has abandoned the child. *In re Abby D.*, 839 A.2d at 1225 (quoting *In re DeKarri P.*, 787 A.2d 1170, 1172 (R.I.2001)). Even if respondent could demonstrate that he had made attempts to have his children visit him at the ACI, such evidence would not be enough to rebut the prima facie evidence of abandonment demonstrated by

---

4. Two petitions filed with the Family Court on behalf of the Wymans say that the Wymans are the children's grandparents and that the children have lived with the Wymans since May 1992. Everything else in the record in-dicates the Wymans are actually friends of the children's extended family, not relatives, and that the children began living with the Wymans in 1994.

the nine years that respondent had no contact with his children before DCYF became involved with the family. The respondent's assertion that DCYF's failed to arrange visitation with his children is without merit. We, therefore, affirm the Family Court's finding that respondent abandoned his children.

 The respondent next questions the Family Court's neutrality, asserting that in TPR cases DCYF must file a petition independently of the judiciary. We have held that a party alleging judicial bias carries a substantial burden of proof to show that the asserted prejudice impaired the fairness of the trial. *In re Michael T.,* 796 A.2d 473, 474 (R.I.2002) (mem.). According to respondent, the first justice acted inappropriately by directing DCYF to file a TPR petition before the Wyman's adoption petition was considered, thus compromising the Family Court's neutrality. To the contrary, the second justice noted at trial that by directing DCYF to file an involuntary TPR petition, the first justice ensured that respondent would have access to a court-appointed attorney. Furthermore, there is no issue whether the second justice, who actually issued the decree after the first justice recused herself to avoid any question of impropriety, was neutral and conducted a fair trial. The respondent offers no evidence of bias beyond the first justice's instructions to DCYF; therefore, his argument fails and we affirm the decree.

 Finally, the respondent contends that the Family Court should have waited until this Court ruled on his motions for post-conviction relief before ruling on the TPR matter in case he was released and able to reunite with his children before they turned eighteen. We note first that there is no record at the Supreme Court that the respondent has appealed any decisions made on a petition for post-conviction relief. Even if an appeal were pending, it would not have the effect on the Family Court case that the respondent contends. As the trial justice noted when he took judicial notice of the respondent's conviction, this Court affirmed respondent's conviction in *State v. Johnson,* 667 A.2d 523 (R.I.1995), thus exhausting his appeals on the merits of his criminal case. Once his conviction was final, the respondent was permitted to pursue collateral review through a petition for post-conviction relief. *See Leonardo v. Vose,* 671 A.2d 1232, 1233 (R.I.1996). Even if the respondent were successful in a petition for post-conviction relief, it would only decrease the amount of time he must spend in prison; it would not overturn his conviction. The heinous crime committed by the respondent may have deprived these two children of a family, and we will not stand by now and allow him to destroy their chances for adoption into another family.

### Conclusion

For the reasons stated here, we affirm the judgment of the Family Court. The record shall be remanded to the Family Court.