**In re BROOK ANN R.**

**No. 2009–156–Appeal.**

Supreme Court of Rhode Island.

May 21, 2010.

Martha J. Kelly, Esq., Department of Children, Youth & Families, for DCYF.

Shella R. Katz, Esq., Court Appointed Special Advocate, for CASA.

Paula Rosin, Office of the Public Defender, Providence, RI, for Respondent.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The father (respondent) appeals from a Family Court decree terminating his parental rights with respect to his child, Brook Ann R. (Brook). This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After examining the written and oral submissions of the parties, we conclude that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the decree of the Family Court.

## I

### Facts and Procedural History

The Department of Children, Youth and Families (DCYF) first became involved with Brook's family on July 2, 2006, when the child's mother, with whom she lived, reportedly overdosed on psychotropic medication. Brook was removed from her mother's custody three days later, after the Family Court entered an *ex parte* order of detention. She was adjudicated to be a neglected child as to her mother and was committed to the custody of DCYF on March 9, 2007. On April 4, 2008, DCYF petitioned the Family Court for the termination of her mother and father's parental rights. On October 16, 2008, the Family Court entered a decree approving an open adoption agreement that her mother had executed.

The respondent-father has been incarcerated since 2004. DCYF sought the termination of his parental rights in relation to Brook on the grounds that: (1) he was an unfit parent by virtue of his incarceration, which rendered it improbable that he could care for his daughter for an extended period; and (2) he had abandoned or deserted his daughter. On January 14, 2009, a trial was held before the Family Court, at which the trial justice heard testimony from respondent and Brook's DCYF social worker.

The respondent testified, through an interpreter, that he was serving a life sentence after a murder conviction and that he had been incarcerated at the Adult Correctional Institutions (ACI) since December 31, 2004. He maintained that he did not commit the murder for which he was incarcerated, and he alleged that there was new exculpatory evidence in that case.[1]

---

1. We note that a separate appeal concerning respondent's murder conviction is pending before this Court in a separate action.

Concerning his relationship with Brook, respondent testified that he lived with Brook and her mother for the first five years of Brook's life, but not thereafter. According to respondent's testimony, after he stopped living with his daughter he continued to see her frequently. He also testified, however, that Brook's mother frustrated his attempts to visit the child and that he had not seen her since his incarceration. He reported that he had requested visitation through his psychiatrist at the ACI.

The respondent further testified that he had provided financial support for Brook through her maternal grandfather, but that he has been unable to provide support since his incarceration. He stated that he and Brook's maternal grandfather had an understanding that her grandfather would provide for her financially while respondent was incarcerated and that respondent would reimburse him upon his release. The respondent stated that he received updates about Brook from her grandfather approximately two or three times a month.

Maureen Romano, the DCYF social worker assigned to Brook's case, also testified at trial. She said that she was informed in July 2006, when the family's DCYF case was opened, that respondent was incarcerated. She testified that respondent never contacted her to request services, reunification, or visits with Brook and that he had not provided financial support. She also stated that, to her knowledge, he had not engaged in any of the parenting services offered at the ACI. According to Ms. Romano, Brook had never requested to see her father and, when asked, Brook said she did not wish to see him. She also testified that Brook's therapist recommended that Brook not visit her father at the ACI. Additionally, Ms. Romano testified that, at the time of trial, Brook was living in a pre-adoptive home and was "extremely" bonded to her foster mother.

At the conclusion of the trial, the trial justice rendered a decision from the bench terminating respondent's parental rights. The trial justice found that respondent had been incarcerated for approximately four years, that he had been separated from Brook for approximately six years, and that he had not provided financial support for his daughter. The trial justice stated that there was no proof substantiating respondent's assertion that he had provided financial assistance for the child through her maternal grandfather. The trial justice determined that respondent was an unfit parent because of his institutionalization. The trial justice also found that respondent had abandoned the child. On January 20, 2009, respondent filed a timely notice of appeal.[2]

## II

### Standard of Review

On appeal, "[t]his Court reviews termination of parental rights rulings by examining the record to establish whether the [Family Court] justice's findings are supported by legal and competent evidence." *In re Victoria L.*, 950 A.2d 1168, 1174 (R.I.2008) (quoting *In re Ariel N.*, 892 A.2d 80, 83 (R.I.2006)). The trial justice's findings are accorded great weight and will not be disturbed on appeal unless they "are clearly wrong or the trial justice overlooked or misconceived material evidence." *In re Destiny D.*, 922 A.2d 168, 172 (R.I.2007). "[T]he trial justice must

---

**2.** The termination-of-parental-rights decree was not entered until February 18, 2009. A prematurely filed notice of appeal, however, does not bar review by this Court in these circumstances. *See, e.g., In re Brooklyn M.*, 933 A.2d 1113, 1121 n. 15 (R.I.2007); *In re Kayla N.*, 900 A.2d 1202, 1206 n. 6 (R.I.2006).

find that the parent is unfit before terminating [his or her] parental rights." *In re Pricillion R.*, 971 A.2d 599, 604 (R.I.2009). "The natural parent's right to due process requires that the state support its allegations by at least clear and convincing evidence." *Id.* (quoting *In re Victoria L.*, 950 A.2d at 1174). Upon a determination of parental unfitness, "the best interests of the child outweigh all other considerations." *Id.*

## III

### Discussion

■ On appeal, respondent argues that the trial justice erred in (1) finding that he had abandoned his daughter, and (2) terminating his parental rights based upon his incarceration. The respondent first contends that there was insufficient evidence to support a finding that he abandoned Brook. Specifically, he contends that he is not entirely to blame for his failure to visit with Brook since his incarceration. He asserts that Brook's mother would not bring her to the ACI to visit him and, once Brook was in DCYF's custody, DCYF did not bring her to visit. He also argues that despite the state's failure to refute his testimony that he provided financial support for the child prior to his incarceration, the trial justice found that he had not provided said support.

The child's guardian *ad litem* and DCYF counter that the six-year period during which respondent did not have contact with his daughter and failed to support her, both before and during his incarceration, constitutes *prima facie* evidence of abandonment. The guardian *ad litem* and DCYF further assert that it was the responsibility of respondent, not DCYF, to initiate contact with Brook.

General Laws 1956 § 15–7–7(a)(4) provides that "[a] lack of communication or

contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion." The respondent's testimony establishes that, at the time of the trial, he had not seen his daughter in at least four years, which is far longer than the statutory period of six months.

The respondent's attempt to evade his responsibility to maintain contact with his daughter by placing the blame first on Brook's mother and then on DCYF is unavailing. We have previously stated that we have "no tolerance for a parent 'who makes halfhearted or no attempts to visit or contact his or her child within the six-month statutory time period * * *.' " *In re Abby D.*, 839 A.2d 1222, 1225 (R.I.2004) (quoting *In re DeKarri P.*, 787 A.2d 1170, 1172 (R.I.2001)). A parent, not DCYF, has the primary and ultimate responsibility "to substantially and repeatedly maintain contact with [his or her child]" in the care of DCYF. *In re Amanda D.*, 918 A.2d 220, 224 (R.I.2007) (quoting *In re Shaylon J.*, 782 A.2d 1140, 1143 (R.I.2001)). Furthermore, it is of no moment that respondent was incarcerated for this four-year period. This Court repeatedly has held that incarceration is not an excuse for failure to maintain contact with one's child for the statutory period. *See, e.g., In re Serenity K.*, 891 A.2d 881, 884 (R.I.2006) (stating that a parent's responsibility to maintain substantial and repeated contact with his or her child endures "even when the parent whose rights are at issue was incarcerated for the six-month statutory period"). Furthermore, this Court has also held that " § 15–7–7(a)(4) does not include the element of willfulness to show abandonment." *In re Craig G.*, 765 A.2d 1200, 1202 (R.I.2001).

The respondent's own testimony reflects that, at the time of trial, he had not had any contact, visitation or otherwise, with

Brook for over four years. There was no evidence that he had made any attempt during this period to arrange for visitation with Brook, except for his assertion that he asked a psychiatrist for visitation. In addition, there is no evidence that he ever attempted to contact Brook by mail or telephone. Similarly, respondent conceded that he had not directly provided Brook with financial support since his incarceration.

Furthermore, when a parent is deemed unfit because he or she abandoned his or her child, as is the case here, DCYF has no obligation to engage in reasonable efforts to reunify the family. Section 15–7–7(b)($l$). Consequently, DCYF was not required to contact respondent to engage in reasonable efforts to reunify him with Brook before successfully petitioning for the termination of his parental rights.

The respondent also argues that the trial justice improperly shifted the burden of proof by faulting respondent for not presenting evidence to corroborate his testimony regarding financial support. This argument is without merit, however, because, as we have stated in similar circumstances,

"[a]lthough the burden of proof never shifts from the state, 'the burden of going forward with the evidence may indeed shift from side to side, and this same burden may properly devolve upon a [respondent] once the state has developed a prima facie case and has adduced evidence sufficient to make it just that the [respondent] be required to challenge the proof with excuse or explanation.'" *In re Corryn B.*, 914 A.2d 978,

982 (R.I.2007) (quoting *In re Jarvis R.*, 766 A.2d 395, 399 (R.I.2001)).

Here, DCYF presented testimony by Ms. Romano that respondent had not provided any financial support for the child. Moreover, the trial justice did not credit respondent's testimony, finding "that he has not provided any personal support even though he says that he gave the maternal grandfather money to give to the child." This factual determination is neither clearly wrong, nor did the trial justice overlook or misconceive material evidence.

After reviewing the record and the trial justice's findings of fact, we are fully satisfied that the trial justice did not err in finding by clear and convincing evidence that the respondent-father abandoned or deserted his daughter, Brook. Because we affirm the termination of the respondent's parental rights on the basis of abandonment, we decline to pass on the termination of the respondent's parental rights on the basis of his imprisonment.

## IV

### Conclusion

For the foregoing reasons, we affirm the Family Court decree terminating the parental rights of the respondent. The record may be remanded to the Family Court.

Justice INDEGLIA took no part in the consideration or decision of this appeal.