JOSEPH C. GILLIS *et ux. vs.* EVELYN MAIN.

MARCH 25, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

Powers, J. This is a petition for the adoption of a female child under the age of eighteen, without the consent of the respondent mother. It was heard pursuant to the provisions of G. L. 1956, §15-7-7, by a justice of the family court who entered a final decree granting the petitioners' prayers. The cause is before us on the appeal of the respondent from such decree.

The following facts are established by the record. Harry M. Main, Jr. and Evelyn J. Gillis were married in November 1957, and of this marriage a daughter was born on May 27, 1958 when the child's mother was nineteen years of age. The respondent referred to her marriage as one of convenience, although she and her husband made an effort to live happily as man and wife. The effort proving unsuccessful, she sought and obtained a divorce from the bond of this marriage, the decree becoming final on December 18, 1959. Meanwhile, she had been awarded custody of the child and

$15 weekly for the child's support. The custody and support awards were continued by the final decree.

Shortly before the birth of her child respondent went to live with her mother and during this time her mother died, some three weeks before the birth of the child. She lived with a sister for approximately two months thereafter. Because of crowded conditions she moved with the baby to the house formerly occupied by her mother, where she remained for two months.

During the time she was at the latter residence the baby suffered two accidents. The child required treatment for smoke inhalation resulting from a fire caused by her mother and for a head injury which occurred when a bathinette in which the child was being bathed apparently collapsed. There were, however, no after effects from either accident. At the request of members of her family, who indicated that the house was in great disorder, she then moved with her child to an apartment in Providence where she also resided for two months.

Thereafter, she and the child took an apartment in Johnston, where she was living when she complained to her mother-in-law that she was neither physically nor mentally able to care for the child and that none of her family was able to help her. Acting on arrangements made by her mother-in-law she temporarily surrendered custody of her daughter to the latter's paternal great-uncle and aunt in Massachusetts. She made arrangements to have the fifteen-dollar weekly award for the child's support paid directly to the Massachusetts relatives.

In November 1959, after the child had been with the great-uncle and aunt for some nine months, respondent reclaimed the child and placed her in the custody of her brother, Joseph Gillis, and his wife, the instant petitioners. She again made arrangements to have the fifteen-dollar weekly support for the child paid directly to petitioners. During

May and June of 1960 respondent also resided with petitioners for six weeks.

The record further establishes that when the latter subsequently refused to surrender the child to her mother, she filed a petition for habeas corpus on November 3, 1961 and about the same time petitioners filed the instant petition for the adoption of the child and further prayed that the child be given their family name. On November 14, 1961 proceedings for return of custody were commenced before a justice of the family court and were continued to December 18 next, at which time a hearing was had on the instant petition. It was stipulated by the parties that the testimony adduced at the November 14 hearing would be incorporated as a part of the record of the adoption proceedings. The overwhelming bulk of the record before us is composed of that compiled at the November 14 hearing.

Neither parent having consented to the adoption, both were named as respondents, and as provided by §15-7-7 the petition alleged "that the parents of the above captioned child have wilfully deserted said child for a period of one year next preceding the filing of this petition and have neglected to provide proper care and maintenance for said child for a period of one year next preceding the filing of petition * * * [ . ]"

At the December 18 hearing the respondent mother recorded her objection, but the respondent father consented by recording the same on the petition as provided by §15-7-5.

After receiving some testimony from petitioners as to their financial resources, the suitability of their home and the attitude of respondent towards her child during the time the child resided with petitioners, the family court justice continued both petitions and reserved his decisions thereon. On January 15, 1962 he handed down a decision denying respondent's petition for custody and quashed the

writ theretofore issued. The question therein decided is not before us and custody of the child remains with petitioners for adoption, without prejudice to respondent's right to institute appropriate proceedings.

In connection with the adoption proceedings, the trial justice found that respondent had both willfully deserted and neglected to provide proper care and maintenance for her child for a period of one year next preceding the filing of the petition. He further found that the child had resided with petitioners for the six months' period required by law and that they were financially able to support and would provide a suitable home for the child. On these findings and the conclusion that permitting the child to remain in the custody of petitioners was in the best interest of the child, he granted the petition for adoption, and the prayer that the child's name be changed to that of petitioners.

From the full record it appears that respondent, from the time the child was born until the instant proceedings were commenced, was at times unemployed and at other times employed for short periods, although she did work for an insurance company continuously for more than one year. It is the testimony of petitioners that even when employed, respondent made no financial contribution toward the support of her daughter, despite her testimony that when she sought to regain custody in November 1961 she had accumulated some $500. The petitioners further testified that respondent was completely lacking in affection for her daughter, giving the impression that her attitude towards the child's welfare amounted almost to complete indifference.

In her testimony respondent made very little effort to contradict petitioners, but did insist that any proper criticism which might be leveled at her was occasioned by her extreme youth at the birth of her child, coming at a time when her marriage had failed and her own mother had died,

all within a period of about one month. She admitted that at one time she had been associating with people she now realized to have been unsuitable companions, but attributed that to the emotional disturbance and physical illnesses from which she was suffering for much of the time since the birth of her child.

The petitioner, Joseph Gillis, readily admitted that unquestionably respondent had been emotionally disturbed. He conceded that when the child was left with him and his wife, respondent gave no indication that she was surrendering her claim to the child and agreed that from time to time respondent inquired as to the regularity with which the child's father was making the weekly payment of $15. In this regard it appears from the record that the payments were made regularly through 1960 and the first half of 1961, but for two or three months preceding the petition for adoption the father's payments were negligible.

The respondent assigns as her reasons of appeal that the decree is against the law, the evidence and the weight thereof; that it does not do justice between the parties; and that the trial justice failed to set forth the evidence upon which he based his decision.

She contends that the decision having failed to point to the evidence is not entitled to the consideration which this court would ordinarily accord it. In rebuttal, petitioners contend that since these proceedings follow the course of equity the rule relied upon by respondent is not applicable. They cite G. L. 1956, §9-24-6, which provides that in equity proceedings the trial justice need not make findings of material facts unless requested by the parties. Such failure of the trial justice, sitting as a chancellor in equity, does not materially affect the scope of review in this court, however.

If the trial justice does make findings of ultimate facts they will be accorded great weight and his decision will not be disturbed unless it is clearly erroneous. *Blomen* v.

*N. Barstow Co.,* 35 R. I. 198, and *Gaynor* v. *Wax,* 50 R. I. 194. Nevertheless on appeal from a final decree in equity the whole case is opened up and the correctness of the decision is subject to review by this court on the basis of the entire record.

Furthermore, where the ultimate facts are undisputed the trier of fact does not have the advantage over this court customarily accorded to him in passing on conflicting evidence. In the circumstances here his failure to make findings of fact is without materiality, since only the legal significance thereof is in issue. In the instant cause, the ultimate facts tending to prove whether respondent willfully deserted or neglected to provide proper care and maintenance by reason of her conduct are not disputed. Rather, respondent offers an explanation of such conduct.

On the basis of her explanation respondent contends that the instant record is barren of evidence which would support the finding of the family court justice that she willfully deserted the child for the period of one year next preceding the filing of the petition within the strict and literal meaning of the statute, the same being in derogation of the common law. She argues that by reason of her emotional and physical incapacity to properly care for her child, the temporary entrusting of her to the care of blood relatives was in itself a demonstration of parental concern not to be confused with willful desertion. Furthermore, she points to the obvious fact that this is not a case where the mother's objection to the adoption of her child comes subsequent in time to the filing of a petition for adoption. Rather, she stresses that the record discloses that after petitioners had refused to surrender custody, she resorted to the writ of habeas corpus in an effort to regain custody of her child. In our judgment there is merit in her position.

The petitioners argue, however, that the strict and literal construction of the statute is only as to its procedural re-

quirements, and that in the interest of the child the evidence tending to prove the offense relied upon should be liberally evaluated. In this regard they refer our attention to the decisions of other albeit respectable authorities. We have read the cases relied upon and in the circumstances therein prevailing it may well be that we would reach similar conclusions.

In our judgment, however, the circumstances of the instant case are not such as to show by clear and convincing evidence that the conduct of respondent amounted to willful desertion. It may well be that it was sufficient to justify the decision of the family court justice, which was given simultaneously with the decision now before us, that the custody of the child might best be left with petitioners. We are not here concerned, however, with the sole question of custody. Rather we are reviewing a decision which if permitted to stand would sever the claim of respondent to the natural relationship of mother and child. Viewed in this light, the decision of the trial justice is erroneous on the issue of willful desertion.

Nor, argues respondent, will the record support a finding that she "neglected to provide proper care and maintenance" for the applicable statutory period and that on this issue also the decision of the trial justice is clearly wrong. It is her contention that the trial justice overlooked the financial support for the child from its father by reason of a court order, which weekly payments were at her direction made directly to petitioners. In our judgment this contention is unassailable. Not only did respondent make provision for the direct payment of financial support to petitioners but, it is conceded by all parties, she made periodic inquiries to assure herself that the child's financial requirements were not neglected.

The petitioners contend, however, that the phrase "neglected to provide proper care and maintenance" connotes

something more than an obligation to provide financial assistance merely. It includes, they argue, that personal attention, concern and affection which one normally attaches to the responsibilities of motherhood.

In this regard they refer our attention to *In re Adoption of Biddle*, 168 Ohio St. 209, where at page 217 the Ohio court stated, "The phrase, 'properly support and maintain,' certainly implies more than mere financial support although here there is practically no evidence of even that. It implies also personal care and attention by the parent having custody." There the respondent mother not only allocated to her personal use the payments made by the father for the support of her child but, from all that appears, offered no justification for her lack of personal attention to the child.

We are not prepared to assume that in a proper case this court would not be constrained to give the phrase as it appears in our statute a similar interpretation. The case before us, however, by reason of circumstances heretofore considered, does not fall within such a category. In our judgment, therefore, the trial justice's decision is not supported by the evidence and for that reason should not be sustained.

The respondent's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the family court for further proceedings in accordance with this opinion.

*David J. Kehoe,* for petitioners.

*John A. Mutter,* for respondent.