**In re ARIEL S.**

**No. 99–195–Appeal.**

Supreme Court of Rhode Island.

Jan. 30, 2001.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Providence, for Plaintiff.

Mary E. Levesque, Middletown, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on December 11, 2000, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the issues raised on appeal at this time.

The respondent, Dexter Stowe (father or respondent), appealed from a decree of the Family Court terminating his parental rights to his daughter, Ariel, born November 3, 1995. The respondent argued that the trial justice erred in finding that he had abandoned or deserted his daughter pursuant to G.L.1956 § 15–7–7(a)(4). The father also argued that the failure to appoint counsel to represent him at the abuse and neglect stage of the proceedings was a violation of his right to equal protection of the laws, and thus constituted reversible error. Finally, he contended that the Department of Children, Youth and Families (DCYF) failed to provide adequate services to him in an effort to reunify him with his daughter. We affirm the judgment of the Family Court.

The respondent and Karyn Sanders (Karyn or mother) met in November 1994 and married in March 1995. They separated in June 1995, when respondent dis-

covered that Karyn was having an affair with their roommate, Michael Sanders (Sanders). Karyn sought a restraining order against respondent in June 1995, alleging that respondent assaulted her when he learned about her relationship with Sanders. The respondent was imprisoned on two separate occasions for violating the restraining order.[1] When Ariel was born on November 3, 1995, she was given the last name "Sanders," but respondent was listed on the birth certificate as the father.

The respondent contended that he learned of the birth of his daughter "on the street" and said that he immediately sent gifts to the baby through a friend. The respondent further testified that, while in a barroom some months later, he learned that his daughter was in the care of DCYF, as the result of DCYF's investigation concerning Ariel's failure to thrive. Rachel Duhamel (Duhamel), was the only DCYF social worker to handle this case from its inception through the termination proceedings. Ariel was given services in her mother's home and finally was taken into DCYF custody in October 1996. For the most part, Duhamel counseled and provided services for Karyn and Sanders, then her fiancé.

In December 1996, an arraignment hearing began for the termination of parental rights of the mother and Sanders concerning Ariel.[2] Although Karyn had previously identified respondent as Ariel's biological father, it was only at this hearing that Duhamel had her first contact with him. The father explained to Duhamel that the reason why he had never seen his daughter was because his wife had obtained a restraining order against him and he did not want to return to jail. The

respondent gave Duhamel a phone number where he could be reached. Duhamel explained to him that for him to see his daughter and form a relationship with her, it was very important for him to cooperate with DCYF. The respondent failed to make any effort to arrange for visits or for a case plan. Duhamel then called him, at the number he had given her, to remind him of the court date on March 19, 1997. He did not appear for this hearing, nor did Duhamel see or hear from respondent again until February 1998. The petition to terminate respondent's parental rights was filed on February 11, 1998.[3] As of April 1, 1998, respondent's trial counsel admitted that the father had never seen the child. The only visitation that respondent sought was visitation during the pendency of the termination hearing. This was granted, although his attendance at these visits was sporadic.

After hearing the evidence presented at the termination hearing, the trial justice found the testimony given by Duhamel to be credible; that she was industrious in her efforts to locate respondent in the time between her initial contact with him on December 6, 1996, and his next scheduled court appearance, on March 19, 1997. The trial justice also found that Duhamel made it clear that if respondent was interested in visiting his daughter or cultivating a relationship with her, it was imperative for him to remain in contact with DCYF to arrange such matters. The respondent never appeared for the scheduled hearing on March 19, 1997, at which time he was defaulted. He did not contact Duhamel, or anyone else at DCYF, until the termination proceedings commenced. In response to the father's argument that the reason he stayed away from Ariel is that

---

1. There were two separate restraining orders in effect with respect to respondent. The first was in effect from June 1995 to June 1996, and the second was in effect from June 1996 through June 1999.

2. Originally, Sanders was listed as Ariel's father on the commitment petition. Upon real-

izing that Sanders was Ariel's stepfather, the petition was dismissed as to Sanders. A new petition was later filed with respect to respondent.

3. The child's mother, Karyn Sanders, does not join in this appeal. Her parental rights were voluntarily terminated with respect to Ariel on May 27, 1998.

he was afraid he would go back to jail because of the restraining order obtained by Ariel's mother, the trial justice indicated that this excuse does not explain why, after the child was in DCYF custody and he was told that visits were possible, he failed to contact her for more than a year. Specifically, the trial justice stated, "He expressed frustration to Ms. Duhamel and he expressed anger to her regarding the system. He offered not one scintilla of evidence that he made an effort to see his daughter between December 1996 and February 1998, a period of some fourteen months." For these reasons, and others enumerated in her decision, the trial justice found that respondent had abandoned and deserted his child, pursuant to § 15–7–7(a)(4).

On appeal, respondent asserted that DCYF failed to make reasonable efforts to provide him with appropriate services aimed at reunifying him with his child. Further, he argued that the court's refusal to appoint counsel at the original probable cause hearing was a violation of his right to equal protection of the laws. He also maintained that he did not abandon or desert his child because his failure to see Ariel was not willful, but the result of fear of arrest due to the restraining order against him. We deem these arguments to be without merit.

■ We are satisfied that there is sufficient evidence in the record to support a finding of abandonment. Section 15–7–7(a)(4) provides:

"A lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion. In the event that the parents of an infant have had no contact or communication with the infant for a period of six (6) months the department shall file a petition pursuant to this section and the family court shall conduct expedited hearings on such petition."

As of April 1, 1998, respondent had never seen his child, at which time she was two and a half years old. He offered no evidence or explanation about why he had not requested visits with Ariel for the time between December 1996 and February 1998, at which point the petition to terminate his parental rights was filed. We are satisfied that DCYF established a *prima facie* case of abandonment and desertion that was not rebutted by respondent. The father's claim that DCYF failed to provide adequate services to reunify him with his daughter is also without merit. For the first two years of Ariel's life, respondent was nowhere to be found. Once he was located he demonstrated no interest in establishing a relationship with his daughter. Section 15–7–7(b)(1) provides that in the event that a petition to terminate parental rights is filed pursuant to § 15–7–7(a)(4), "the department has no obligation to engage in reasonable efforts to preserve and reunify a family." Therefore, respondent's claim that he was not provided with adequate services by DCYF to establish reunification is without merit.

■ Finally, the contention that the respondent's civil rights were violated as a result of the failure of the trial justice to appoint counsel at the December 4, 1996, arraignment hearing relative to the termination of the mother's parental rights is of no moment to this appeal. The respondent was given appointed counsel for his termination hearing and was represented by competent counsel at the trial and on appeal. The failures in this case are those of respondent and not the "system" he so vehemently disdains.

Accordingly, the respondent's appeal is denied and dismissed. The decree of the Family Court granting the termination of the father's parental rights is affirmed and the papers of this case are remanded to the Family Court.