**In re CODY F.**

**No. 2000-105-Appeal.**

Supreme Court of Rhode Island.

Feb. 16, 2001.

Thomas J. Corrigan, Jr., Washington Crossing, Frank P. Iacono, Jr., for plaintiff.

Melissa Austin Long, Paula Rosin, Providence, for defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on January 24, 2001, pursuant to an order directing the respondent-father to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the issues raised on appeal at this time.

The respondent, John Taggert (father or respondent), has appealed from a decree of the Family Court terminating his parental rights to his son, Cody, born June 5, 1997. On appeal, the respondent asserted that the trial justice erred in finding, pursuant to G.L.1956 § 15-7-7(a)(4), that he had abandoned or deserted his son. In addition, the father contended that the Family Court failed to find by clear and convincing evidence that the Department of Children, Youth and Families (DCYF) made reasonable efforts designed to reunify him with Cody. We affirm the judgment of the Family Court.

Cody was born on June 5, 1997, at Women and Infants Hospital, and was immediately taken from his mother and was placed in the custody of DCYF.[1] Jill Mur-

---

1. The mother has a long history of mental illness and at the time of the birth it was

phy (Murphy), a DCYF social worker, was assigned to the case on the day of Cody's birth.[2] At the time of the child's birth respondent was homeless and was working as a commercial fisherman outside the state. Approximately three weeks after Cody's birth, respondent called Murphy to introduce himself and to arrange a meeting to discuss case planning and visitation. The respondent stated that he was working as much as possible so he could save enough money to get an apartment for himself and his son. At that time, respondent informed Murphy that, because he was homeless and did not have a phone, there was no way for her to reach him. A meeting was scheduled for July 9, 1997, but respondent failed to keep the appointment, purportedly because he feared that Murphy would turn him in to authorities because of the outstanding warrant for his arrest. Although Murphy had prepared a case plan, it was neither reviewed nor signed by respondent because he was nowhere to be found.

Although respondent contended that from July 1997 through June 1998, he had attempted to contact Murphy and had left numerous messages for her, the evidence is clear that he had no contact with DCYF during that period.[3] In June 1998, having had no communication from respondent for approximately one year, Murphy sent out "search letters"[4] and finally located respondent at the Adult Correctional Institutions (ACI), where he was serving eight years of a thirty year sentence for burglary and obstructing a police officer.

Upon locating respondent, Murphy arranged to meet with him at the ACI. During this meeting, respondent presented Murphy with a myriad of excuses for his failure to contact DCYF. Specifically, he indicated that he did not know how to use the ACI telephone system, that he had no access to a telephone directory, that he was not allowed to use telephone information, and, that he had received no assistance from ACI staff despite his numerous requests. In addition, respondent said that he believed Cody's mother was contacting Murphy on his behalf. Further, respondent admitted that he was aware that a termination petition filed on June 12, 1998 had been impending. Respondent informed Murphy that he failed to keep the July 1997 appointment because of an outstanding warrant for his arrest. He explained that he feared that DCYF would turn him in to the authorities. The respondent also admitted to drinking and physically abusing Cody's mother, and, according to Murphy, declared that if his rights were terminated he would get Cody back "no matter what." Following the meeting at the ACI, respondent filed a motion for visitation that was denied by the Family Court.

A hearing on the termination petition commenced on August 30, 1999, at the conclusion of which the trial justice found that respondent had abandoned and deserted his child. Specifically, the trial justice noted that respondent had no contact with DCYF since his November 1997 incarceration. Further, considering respondent's testimony, the trial justice stated, "[t]he [c]ourt finds Mr. Taggert's excuses, if you may call them that, for not contacting the caseworker, to be bizarre and pre-

---

determined that the illness was serious and would affect the care of the child. Although the mother's rights were not terminated by DCYF, she indicated that she would be willing to enter into a direct consent adoption.

2. Since he was born, Cody has been in the same foster home, which DCYF considers to be an appropriate pre-adoptive home.

3. The respondent says that he made numerous attempts to contact caseworker Murphy.

In one instance, respondent said he left a message for Murphy with a DCYF investigator, but Murphy says she never received it.

4. A "search letter" is a tool used by DCYF to determine where a missing parent may be residing. These letters were sent to the post office, police, and ACI requesting that they respond if they knew the whereabouts of the missing parent.

posterous. \*\*\* The [c]ourt finds that the father \*\*\* made a consistent and willful plan to disregard the best interest of this child."

On appeal, respondent argued that the Family Court erred in finding that he abandoned and deserted his child after his incarceration. In addition, he asserted that the Family Court failed to find by clear and convincing evidence that DCYF offered services or made reasonable efforts designed to enable him to establish a relationship with Cody.

▪ We are satisfied that there is sufficient evidence in the record to support the trial justice's finding of abandonment and desertion. This Court recently has held that, pursuant to § 15–7–7(a)(4), in order to establish a *prima facie* case of abandonment and desertion, DCYF merely needs to demonstrate a lack of visits or contact with the child for the statutory six-month period.[5] *In re Craig G., Jr.*, 765 A.2d 1200 (R.I.2001). The respondent testified that he had no contact with Cody since the day of his birth, nor did he have any contact with DCYF between July 1997 and June 1998, a period significantly greater than six months. Further, respondent testified that before he was incarcerated, rather than attempting to visit his child, he would go out on "male drinking binge[s]" for "3 or 4 days" and then return to work on a fishing boat for an extended period. As noted, the trial justice found respondent's excuses for not contacting DCYF "bizarre and preposterous." We agree with this characterization, and are satisfied that DCYF has met its burden to establish a *prima facie* case of abandonment.

▪ We deem respondent's assertion that DCYF failed to make reasonable efforts to reunify him with his child to be without merit. This Court recently held

that in cases where abandonment is alleged pursuant to § 15–7–7(a)(4), "the department has no obligation to engage in reasonable efforts to preserve and reunify a family." *In re Ariel S.*, 765 A.2d 846 (R.I.2001) (quoting § 15–7–7(a)(4)). Thus, we reject respondent's claim that DCYF failed to make reasonable efforts to establish reunification with Cody, a child he has never held and has not seen since the day of his birth.

Accordingly, the respondent's appeal is denied and dismissed. The judgment of the Family Court terminating the father's parental rights is affirmed and the papers of the case are remanded to the Family Court.

contact or communication with the infant for a period of six (6) months, the department shall file a petition pursuant to this section and the family court shall conduct expedited hearings on such petition."

---

**5.** General Laws 1956 § 15–7–7(a)(4) provides: "A lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion. In the event that the parents of an infant have had no