**In re DEKARRI P.**

**No. 2000–495–APPEAL.**

Supreme Court of Rhode Island.

Dec. 28, 2001.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Washington Crossing, for petitioner.

Paula Rosin, Catherine A. Gibran, Andrew Alberino, Providence, for respondent.

Present: WILLIAMS, C.J.,
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

A father's abandonment of his son led to the Family Court's termination of his parental rights (TPR). Because the record shows that the father failed to visit with or engage in any other meaningful contacts with his son for more than six months, we affirm the Family Court's TPR decree.

The respondent-father, Sean Duncan (father), has appealed from the TPR decree. His son, DeKarri, was born on January 30, 1998. The father has been serving a prison sentence at the Adult Correctional Institutions (ACI) pursuant to a judgment of conviction and commitment entered August 29, 1997. The father was sentenced to twenty-five years, five years, six months to serve, concurrently, on each of two counts: delivery of a controlled substance and conspiracy to violate the Controlled Substance Act. A single justice of this Court ordered the parties to show cause why we should not decide this case summarily. Because they have not done so, we proceed to decide the appeal at this time.

DeKarri was born to his sixteen-year-old mother at Woman & Infant's Hospital on January 30, 1998. After the child's birth, the hospital placed him on a seventy-two-hour hold. Because the hospital staff was concerned about the mother's ability to care for the child, it contacted the Department of Children, Youth and Families (DCYF). The child has remained in non-relative foster care since his birth. Apparently, the mother intends to relinquish her parental rights voluntarily. Thus, the mother is not part of this appeal.

The father has been incarcerated since before his son was born. On June 22, 1998, he admitted to neglect and then refused visits with his son until May 1999. After a few visits, the father requested confirmation of paternity via a blood test, which the court ordered in November 1999. In March 2000, the test results confirmed his paternity.

DCYF filed a TPR petition on November 24, 1999, on the basis that the child had been in custody for more than twelve months; his parents had abandoned or deserted him; the father was unfit by reason of imprisonment; and it was unlikely that the child would be returned to his care within a reasonable period.

The Family Court decided that the father was unfit and that he had abandoned the child by having no contact or communication with him from January 1998 to May 1999. Based on the fact that the child had been in foster care since birth and there was no likelihood that, given his prison

sentence, the father would be able to care for him on a daily basis for a significant period, the court terminated the father's parental rights.

On appeal, the father asserts that the trial justice erred when he found that he had abandoned his son. Essentially, he contends that his situation was much like the one in *Gillis v. Main,* 96 R.I. 88, 94, 189 A.2d 808, 811 (1963), where a young mother temporarily gave her baby to family members to care for while she was incapacitated. The facts in *Gillis,* however, are markedly different for several reasons. Most compelling, the young mother in *Gillis* never abandoned her child; she continued to demonstrate her concern for her child by insuring that the weekly child support was paid with regularity to the relatives she had asked to care for her baby. *Id.* at 93, 189 A.2d at 811.

General Laws 1956 § 15–7–7(a)(4) provides that a lack of communication or contact with a child for at least six months constitutes prima facie evidence of abandonment. Further, once a petition is filed pursuant to this section, DCYF is under no obligation to make reasonable efforts to reunify the family. *See* § 15–7–7(b)(1). *See also In Re Shaylon J.,* 782 A.2d 1140, 1143 (R.I.2001). Recently, this Court has addressed various abandonment scenarios.

Several months ago, for example, we decided a case with a similar fact pattern. *See In re Devone S.,* 777 A.2d 1268 (R.I. 2001) (per curiam). *Devone S.* is instructive because it supports the proposition that a parent can abandon a child by not actively engaging in efforts to contact that child, despite having opportunities to do so. Like this father, Devone's father spent time in prison, and he too failed to contact DCYF while he was incarcerated. Also, like Devone's father, the father in this case seems to have turned a deaf ear on DCYF's efforts to help facilitate contact with his son. Indeed, in this case the father failed to demonstrate any effort to establish a parental relationship with his child until he opposed DCYF's TPR petition. *See also In re Ariel S.,* 765 A.2d 846, 848 (R.I.2001) (per curiam) (father never saw child, failed to contact DCYF for visits, or make court appearances in a fourteen-month period); *In re Craig G.,* 765 A.2d 1200, 1202 (R.I.2001) (per curiam) (substantial lapse in visits between father and children over twenty-two months—willfulness not necessary element for abandonment). In *In re Cody F.,* 766 A.2d 937, 939 (R.I.2001) (per curiam), the father had no contact with his son since the day of his birth, and he had no contact with DCYF for eleven months.

These cases all illustrate this Court's intolerance for a parent, such as this father, who makes halfhearted or no attempts to visit or contact his or her child within the six-month statutory time period constituting prima facie evidence of abandonment. For the reasons discussed above, we conclude that the Family Court did not err in deciding that the father had abandoned his son. Consequently, we deny the respondent-father's appeal and affirm the TPR decree.