In re TORY S.

No. 2008–76–Appeal.

Supreme Court of Rhode Island.

Feb. 15, 2010.

Salvatore Schiavitti, Petitioner Pro Se.

Gerald M. Brenner, Esq., Woonsocket, for Respondent.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

Salvatore Schiavitti (respondent or Mr. Schiavitti), the biological father of minor child Tory S., appeals *pro se* from a Family Court decree terminating his parental rights with respect to that child. The respondent filed a timely notice of appeal on October 11, 2007.

This case came before the Supreme Court on December 3, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the memoranda submitted by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. The Court is deciding this case on the basis of the memoranda filed by the parties and the statements made by the respondent at oral argument. For the reasons set forth herein, we deny and dismiss the appeal.

### Facts and Travel

On October 3, 2002, respondent was adjudicated to be the biological father of

minor child Tory S. (Tory's date of birth is November 11, 1996).

It is pertinent to note at the outset that respondent, by his own admission, has been incarcerated at the Adult Correctional Institutions (ACI) for much of Tory's life.[1]

In 2003, respondent filed a motion requesting that the Family Court release information concerning Tory's mother, specifically her address; respondent contends that he sought that information in order to attempt to obtain visitation with Tory. On October 31, 2003, the Family Court held a hearing with respect to the above-referenced motion. Tory's mother was present at the hearing, and she objected to the release of the requested information. At the conclusion of the hearing, the motion was denied.[2]

In March of 2004, the state agency known as "Child Support Enforcement" (CSE) filed an *ex parte* motion in the Family Court requesting that, due to a history of domestic violence, the Family Court's file regarding this case be sealed pursuant to G.L.1956 § 15–22–4 and § 15–22–5.[3] In connection with CSE's motion to seal, Tory's mother submitted an affidavit describing the physical and mental abuse

that she alleged respondent had inflicted upon her. At the hearing on the motion to seal, respondent stated that he had no objection to the file being sealed. At the conclusion of the hearing, the Family Court granted the motion, and the file was sealed.

On August 31, 2006, respondent filed a *pro se* motion seeking visitation with Tory. Shortly thereafter, on October 13, 2006, Tory's biological mother and her fiance (petitioners) filed a petition for adoption of Tory. (By necessary implication, that petition could be granted only if respondent consented to the adoption or, alternatively, if his parental rights were terminated.) The petitioners alleged that respondent had abandoned and deserted Tory; they also alleged that the adoption would be in the best interests of the child. *See* G.L. 1956 §§ 15–7–5, 15–7–7(a)(4). The respondent objected to petitioners' proposed adoption of Tory. In his objection, respondent stated that he "did not abandon or desert his son as he was incarcerated and was released on July 31, 2006."

On June 1, 2007, a hearing was held before the Family Court with respect to the termination of respondent's parental rights.[4] The court heard the testimony of

---

1.  The respondent admitted in his February 7, 2007 answers to interrogatories that, as a result of various convictions, he was incarcerated from January through May 1998, from August 2000 through January 2001, from January 2001 through July 2001, from June 2002 through March 2003, and from January 2004 through July 2006. The respondent was once again in prison at the time of oral argument before this Court.

2.  It was noted in the case file pertaining to the release of information hearing that, if respondent filed a motion for visitation, notice would be provided to Tory's mother through the agency known as "Child Support Enforcement" (CSE). The CSE is a subdivision of the Department of Administration's Division of Taxation.

3.  General Laws 1956 § 15–22–4(b)(1) provides, in pertinent part, that the "agency shall safeguard personal data if the * * * agency is provided with reasonable evidence of a history of domestic violence."

    Section 15–22–5(a) provides, in part, that "when the court receives notice from the * * * agency through a motion to seal the file or otherwise, that the * * * agency has been notified of a history of domestic violence pursuant to § 15–22–4, the court shall determine whether disclosure of personal data could be harmful to the parent or child before releasing the data to any other person or agency."

4.  The respondent was represented by counsel during the termination proceedings.

Tory's mother, Tory's maternal grandfather, and Tory's biological father (Mr. Schiavitti).

The court first heard the testimony of Mr. Schiavitti. Mr. Schiavitti testified that he had been incarcerated numerous times during the years 2003 through 2006 and that he "didn't want to bring the child into that kind of environment." He stated that, before he was adjudicated to be Tory's father but after the child was one year old, he attempted to visit Tory, but Tory's mother "turned [him] away." Mr. Schiavitti further testified that, after he was adjudicated to be Tory's father, he sent letters to Tory's mother at her parents' address,[5] but that Tory's maternal grandparents told him "not to send letters or they would call the police." The respondent stated that he never asked Tory's mother if he could visit Tory because she refused to speak with him.

Mr. Schiavitti testified that, after he was adjudicated to be Tory's father, he did not know where Tory's mother was living, although he did know where her parents lived. Mr. Schiavitti further testified that, when he attempted to obtain the address of Tory's mother from the Family Court in 2003, it was his intention to try to obtain visitation with Tory. Mr. Schiavitti stated that, after the file was sealed and he was denied the address of Tory's mother, it was his belief that he could not obtain visitation with Tory. He testified that, although he was unsure whether he had filed a motion for visitation in 2003, 2004, or 2005, he recalled filing such a motion in

August of 2006.[6] He stated that, soon after the filing of his August of 2006 motion, he received "adoption papers and a restraining order."

Tory's mother was the next witness to testify at the June 1, 2007 hearing. She testified that, on one occasion after Mr. Schiavitti was adjudicated to be Tory's father, he appeared at her parents' house and attempted to tell her that her son was going to have a baby sister. (Mr. Schiavitti denied this assertion during his testimony.) She further testified that respondent had tried to contact her at her parents' homes both by written correspondence and by phone. She stated that both of her parents had apprised her of these attempts by Mr. Schiavitti to contact her, but she responded to neither his letters nor his calls. She stated that the only time she received letters from him was when he was in prison; when he was out of prison, she never heard from him or saw him.

Tory's mother further testified that none of the correspondence that she received from Mr. Schiavitti was addressed to Tory, and that Mr. Schiavitti sent neither birthday nor Christmas cards nor presents to Tory. She testified that, since October 3, 2002, she had not had any contact with Mr. Schiavitti regarding Tory. She testified that the August 2006 motion for visitation from Mr. Schiavitti was the only such motion of which she was aware; she stated that she had not received any other informal written or oral requests for visitation from Mr. Schiavitti. She further testified that, at the time of the termination hear-

---

**5.** After Tory's birth, his mother initially lived with both her parents. When her parents separated (a prelude to their eventual divorce), Tory's mother moved in with her mother at a different residence. Tory's maternal grandfather remained at the family's original address. Tory's mother testified that she moved out of her mother's home approxi-

mately five years prior to the termination hearing.

**6.** During the hearing, counsel for both parties agreed that, between October 3, 2002 (the date on which paternity was established) and August of 2006, the only motion filed in the Family Court by respondent seeking visitation was filed in August of 2006.

ing, Tory was ten years old and that the last time he had seen his father was "[a] week before he turned a year old."

Tory's maternal grandfather was the final witness to testify at the termination of parental rights hearing. He testified that he had answered phone calls from the incarcerated Mr. Schiavitti seeking to speak with his daughter, but that she was not home at the time. He testified that he would relay these messages to Tory's mother, but he added that Mr. Schiavitti never left a phone number. He testified that he did not know of any requests for visitation made by Mr. Schiavitti until August of 2006. He further testified that, when Mr. Schiavitti was out of the ACI, he would come to the maternal grandfather's house and bang on the door; he stated that he would tell Mr. Schiavitti: "[I]f you don't get out of here, I'm going to call the cops." He testified that, on occasion, he did in fact call the police and that Mr. Schiavitti would then leave. He estimated that his calls to the police concerning Mr. Schiavitti occurred when Tory was approximately thirteen to fourteen months old.

On September 26, 2007, the Family Court justice issued her decision and findings of fact. She found that, from 1997 until 2003, respondent had "abandoned and deserted the minor child * * *." She further found that he had not had "any contact with said minor child in 1998, 1999, 2000, 2001 and 2002 prior to his being adjudicated the biological parent." She noted that respondent "admitted that when he had filed the motion for visits in August 2006 there had been no contact between him and the minor child for several years;" she further noted that respondent gave as his reason for the lack of contact that "he had not wanted his son to visit him at the ACI."

As to respondent's contention that his ability to contact Tory was thwarted by the child's mother and maternal grandparents, the Family Court found that respondent was "wrong in his assessment of his ability to contact" the mother of the child. The court found that, had respondent filed a motion for visitation, notice would have reached Tory's mother through the CSE, despite the fact that he had been denied her address. The court noted that "[a]lmost three years passed after the adjudication of paternity before he filed his pro se motion for visits in August of 2006." The Family Court justice further stated that, during that three-year period, respondent "did not have any contact with Tory," and she found that, during that period of time, respondent did not even send any cards or gifts to Tory.

The court found Tory's mother to be "credible and reliable;" it found noteworthy her testimony that Mr. Schiavitti had never addressed his parental rights in his correspondence to her during his incarceration or during the periods of time that he was released. The court found that petitioners had demonstrated "by clear and convincing evidence that there [had] been no contact for the statutory period of six months." *See* § 15–7–7(a)(4). In doing so, it noted that the Rhode Island Supreme Court has stated that it has "no tolerance for a parent who makes halfhearted or no attempts to visit or contact his or her child within the six months, the statutory time period." *See In re Abby D.,* 839 A.2d 1222, 1225 (R.I.2004); *see also In re DeKarri P.,* 787 A.2d 1170, 1172 (R.I. 2001).

As to the adoption of Tory by petitioners, the court found that Tory "has lived with the Petitioners since January of 2002;" it ruled that, in view of Mr. Schiavitti's abandonment and desertion, the petition for adoption could proceed. Thereafter, on October 24, 2007, the adoption decree was granted, and Tory's

surname was changed to that of his adoptive father.

## Standard of Review

■■■ When reviewing a decision to terminate parental rights, this Court examines "the record to establish whether the [Family Court] justice's findings are supported by legal and competent evidence." *In re Ariel N.*, 892 A.2d 80, 83 (R.I.2006); *see also In re Jose Luis R.H.*, 968 A.2d 875, 881 (R.I.2009); *In re Victoria L.*, 950 A.2d 1168, 1174 (R.I.2008). The Family Court justice's findings of fact "are accorded great weight on appeal and will not be disturbed unless it can be shown that they are clearly wrong or the trial justice overlooked or misconceived material evidence." *In re Jose Luis R.H.*, 968 A.2d at 881 (internal quotation marks omitted); *see also In re Destiny D.*, 922 A.2d 168, 172 (R.I.2007). Additionally, we have noted that, "[b]efore the state may terminate a parent's parental rights, due process requires that the state support its allegations by at least clear and convincing evidence." *In re Destiny D.*, 922 A.2d at 172. Finally, we are mindful of the principle that the "best interests of the child outweigh all other considerations." *In re Kristen B.*, 558 A.2d 200, 203 (R.I.1989); *see also In re Destiny D.*, 922 A.2d at 173.

## Analysis

The respondent challenges the Family Court justice's decision to terminate his parental rights. The respondent contends that there was no reason to terminate his parental rights because "[t]here is no physical abuse, no sexual abuse, no child molestation with any child and me never mind with Tory." The respondent further alleges that Tory's mother had lied regarding violence toward her in order to obtain a restraining order against him.

The respondent's argument with respect to the absence of physical or sexual abuse is misplaced because his parental rights were terminated on the grounds of abandonment or desertion, and not on grounds relating to abuse or physical violence. The authority for termination of parental rights premised upon abandonment or desertion is set forth in § 15–7–7(a), which provides in relevant part as follows:

"The court shall * * * after notice to the parent and a hearing on the petition, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court finds as a fact by clear and convincing evidence that:

" * * *

"(4) The parent has abandoned or deserted the child. A lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion."

This Court, in reliance upon § 15–7–7(a)(4), has on numerous occasions upheld the termination of parental rights of parents who were incarcerated—as Mr. Schiavitti had been for most of Tory's life. *See, e.g., In re Serenity K.*, 891 A.2d 881, 884 (R.I.2006) (stating that the duty to maintain contact with one's child continues "even when the parent whose rights are at issue was incarcerated for the six-month statutory period"); *In re DeKarri P.*, 787 A.2d at 1172 (stating that an incarcerated parent "can abandon a child by not actively engaging in efforts to contact that child, despite having opportunities to do so").

■■■ After reviewing the record and the findings of fact made by the Family Court justice, we are fully satisfied that that justice did not err in finding, by clear and convincing evidence, that respondent had abandoned or deserted Tory for the six-

month period set forth in § 15–7–7(a). The trial justice's findings of abandonment were supported by extensive evidence on the record that respondent had not contacted Tory for many years, well in excess of the statutory six months required as a basis for the termination of parental rights.

Despite the respondent's contentions with regard to his attempts to contact Tory's mother both while he was incarcerated and when he was free, nothing in the record reflects that these attempts were actually aimed at gaining visitation with Tory (with the sole exception of the 2006 motion for visitation).

## Conclusion

For all of the foregoing reasons, we affirm the Family Court decree terminating the parental rights of the respondent. The record may be remanded to that tribunal.