### In re ANGELINA T.

### No. 2009–217–Appeal.

Supreme Court of Rhode Island.

June 10, 2010.

Martha J. Kelly, Esq., Department of Children, Youth & Families, for DCYF.

Shella R. Katz, Esq., Court Appointed Special Advocate, for CASA.

Paula Rosin, Office of the Public Defender, for Respondent.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

Jason Tench appeals from a Family Court decree terminating his parental rights to his daughter, Angelina. This case came before the Supreme Court for oral argument on May 11, 2010, pursuant to an order directing both parties to appear and show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. For the reasons set forth below, we vacate the decree of the Family Court.

## I

### Facts and Travel

On December 4, 2008, the Department of Children, Youth and Families (DCYF) filed a petition in the Family Court seeking to terminate Jason Tench's parental rights. DCYF alleged that two separate grounds existed for terminating Mr. Tench's parental rights, to wit (1) unfitness by reason of conduct or conditions serious-

ly detrimental to the child and (2) abandonment.[1] At a brief termination hearing, DCYF presented documentary evidence that when Angelina was born on April 2, 2005, Mr. Tench was incarcerated and that he had resided at the Adult Correctional Institutions (ACI) for all but approximately 100 days of his daughter's life. Additionally, it disclosed that as of June 26, 2006, Mr. Tench had been denied visitation. Mr. Tench had filed a renewed motion for visitation, but that was denied on June 6, 2007. However, that hearing justice allowed him the opportunity to refile the motion upon completion of a drug-treatment program. On April 8, 2008, after he had completed a substance-abuse program, as well as behavioral therapy, anger management, and a domestic-violence-prevention program, he did just that. However, Mr. Tench's third motion for visitation was denied as well.

Mr. Tench was the sole witness at the termination hearing. He testified that as a result of his incarceration, he had been unable to financially support Angelina. He said that he was scheduled to complete his sentence in September 2009, but that he believed he would be released in April 2009 for good behavior. After explaining the meaning of the termination proceeding to Mr. Tench, his attorney asked him to explain to the Family Court justice "why, in spite of the fact that you've only been out of jail for 100 days of Angelina's life, why he shouldn't terminate your parental rights." Mr. Tench responded that Angelina's birth had changed his life and that he had been working hard to better himself and to be a good father. His attorney then submitted evidence reiterating that Mr. Tench had made repeated efforts to reinstate his visitation. Finally, he offered a letter from Mr. Tench's therapist at the ACI, Kathryn Manning, supporting reunification and noting that he had not received any disciplinary sanctions since October 2007.

After hearing that sparse evidence, the Family Court justice concluded that "certainly he has abandoned the child because he's been in the ACI for a period," and "[h]e hasn't supported the child." He then terminated Mr. Tench's parental rights. After counsel for DCYF sought clarification, the justice indicated that he was making a finding of unfitness on both grounds set forth in the petition. The termination decree was entered on March 6, 2009, and Mr. Tench timely appealed. On appeal, Mr. Tench argues that the trial justice did not make the necessary findings to support termination of his parental rights. Additionally, Mr. Tench contends that the rec-

---

1. General Laws 1956 § 15-7-7 provides in relevant part:

"(a) The court shall, upon a petition duly filed by a governmental child placement agency or licensed child placement agency after notice to the parent and a hearing on the petition, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court finds as a fact by clear and convincing evidence that:

" * * *

"(2) The parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as, but not limited to, the following:

"(i) Institutionalization of the parent, including imprisonment, for a duration as to render it improbable for the parent to care for the child for an extended period of time;

" * * *

"(4) The parent has abandoned or deserted the child. A lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion. In the event that parents of an infant have had no contact or communication with the infant for a period of six (6) months the department shall file a petition pursuant to this section and the family court shall conduct expedited hearings on the petition."

ord before the Family Court justice did not support by clear and convincing evidence either the justice's finding of abandonment or his finding of conduct or conditions seriously detrimental to the child.

## II

### Standard of Review

■ "Natural parents have a fundamental liberty interest in the care, custody, and management of their child that does not evaporate if they are not model parents or have lost temporary custody of their child." *In re Natalya C.,* 946 A.2d 198, 202 (R.I.2008) (quoting *In re Antonio G.,* 657 A.2d 1052, 1057 (R.I.1995)). To protect this interest, the termination of "a parent's parental rights * * * requires that the state support its allegations by at least clear and convincing evidence." *In re Tory S.,* 988 A.2d 151, 155 (R.I.2010) (quoting *In re Destiny D.,* 922 A.2d 168, 172 (R.I.2007)). "When reviewing a decree involving the termination of parental rights, this Court examines the record to determine whether legally competent evidence exists to support the findings of the trial justice." *In re Natalya C.,* 946 A.2d at 202 (citing *In re Jennifer R.,* 667 A.2d 535, 536 (R.I.1995)). "A Family Court justice's findings are entitled to great weight and will not be disturbed absent a showing that the trial justice was clearly wrong or that material evidence was overlooked or misconceived." *Id.* (quoting *In re Nicole B.,* 703 A.2d 612, 615 (R.I.1997)).

## III

### Discussion

#### A

#### Conduct or Conditions Seriously Detrimental to the Child

■ As a preliminary matter, our review of the Family Court's decree reveals it to be disappointingly bereft of a finding that DCYF had made "reasonable efforts * * * to encourage and strengthen the parental relationship," a necessary precondition of a finding of unfitness under G.L. 1956 § 15–7–7(a)(2)(i). Section 15–7–7(b)(1). Such a finding is essential for termination on the ground of "conduct or conditions seriously detrimental to the child," because of "imprisonment, for a duration as to render it improbable for the parent to care for the child for an extended period of time." Section 15–7–7(a)(2)(i). For this reason alone, the Family Court's finding of "conduct or conditions seriously detrimental to the child" is unsupportable.

We also are troubled by the scant record upon which the justice came to the conclusion of unfitness. The sole witness in this proceeding was the parent whose rights DCYF sought to terminate. There was not any testimony from a DCYF case worker, nor any testimony of a case plan or the best interests of the child. Although "parental rights should not be terminated solely because of conviction of a crime and the parent's subsequent incarceration, a parent's imprisonment may be considered along with other factors," which includes "the probable duration of his incarceration." *In re Micaela C.,* 769 A.2d 600, 604 (R.I.2001) (father sentenced to life in prison without possibility of parole). But here there was uncontradicted testimony that Mr. Tench was to complete his current sentence at the ACI in September 2009, a mere six months after the hearing date, with a possible early release in a matter of weeks, in April 2009.[2] Accordingly, DCYF failed to offer sufficient evidence to meet its burden of proof on this ground for termination. Based on the rec-

**2.** We note however that it was revealed at oral argument that Mr. Tench remains incarcerated, after being arrested three weeks after

ord before us, we conclude that the Family Court justice was clearly wrong in ruling that Mr. Tench's incarceration rendered it improbable that he would be able to care for Angelina for an extended period of time.

## B

### Abandonment

■ We also are satisfied that the Family Court justice's finding of abandonment was clearly erroneous. Under § 15–7–7(a)(4), "[a] lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion." It is true that DCYF submitted evidence that Mr. Tench had not seen Angelina for more than six months, but it failed to demonstrate in any way that Mr. Tench had not communicated with her during the same period. It is not the mere fact of incarceration that constitutes abandonment, but proof that a parent has not "actively engage[d] in efforts to contact that child, despite having opportunities to do so." *In re Unique T.*, 822 A.2d 182, 184 (R.I.2003) (quoting *In re DeKarri P.*, 787 A.2d 1170, 1172 (R.I.2001)). DCYF argued that at the time of the hearing Mr. Tench had not seen Angelina for over two years, and it asserts before us that "there was no evidence presented that [Mr. Tench] had ever made any attempts to maintain a relationship with his daughter." There is evidence in the record, however, that Mr. Tench was denied joint custody and visitation by orders entered on June 26, 2006, and June 12, 2007. He was nevertheless allowed to refile a motion for visitation after he had successfully completed a drug-treatment program. The record also contains evidence indicating that Mr. Tench completed a drug-treatment program, but was again

his release. The record of Mr. Tench's recidi-

denied visitation subject to his completion of a parent-child evaluation upon his release from the ACI.

We are satisfied that the trial justice overlooked this evidence and failed to make any findings as to whether Mr. Tench's efforts to seek visitation were in fact a good faith attempt to establish a relationship with the child sufficient to overcome the evidence of abandonment or desertion. Given the paucity of evidence introduced by DCYF and the lack of findings by the trial justice, we are of the opinion that the termination decree cannot be sustained on the ground of abandonment.

## IV

### Conclusion

For the reasons set out above, the Family Court decree terminating Mr. Tench's parental rights is vacated and the papers of the case are returned to the Family Court.

Justice INDEGLIA did not participate.

vism was before the trial justice.