**Supreme Court**

No. 2015-230-Appeal.
(P13-1229-1)
No. 2016-161-Appeal.
(P13-1229-2)

In re Kyeshon J. et al.                    :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2015-230-Appeal.
(P13-1229-1)
No. 2016-161-Appeal.
(P13-1229-2)

In re Kyeshon J. et al.                                    :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court**.  The respondent father, Kai Jackson, appeals from a decree of the Family Court terminating his parental rights with respect to his two sons, Kyeshon J. and Jarell G.  This case came before the Supreme Court for oral argument on September 29, 2016, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this appeal may be decided at this time.  For the reasons set forth below, we affirm the decree of the Family Court.

## I

### Facts and Travel

On November 19, 2013, Sandra Armand and Gorvey Armand (petitioners) filed two adoption petitions in Family Court so that Gorvey[1] might become the legal father of both Kyeshon (who was born on May 23, 1999) and Jarell (who was born on November 9, 2000).  As

---

[1]     We shall at some points in this opinion employ first names and omit the surnames.  In doing so, we intend no disrespect.

the basis for their petitions, petitioners alleged that respondent had failed to provide for Kyeshon and Jarell pursuant to G.L. 1956 § 15-7-7(a). (Those petitions could be granted only if respondent consented to the adoptions—or, alternatively, if his parental rights as to the children were terminated.) The respondent, who was then incarcerated in Massachusetts, refused to consent to the adoptions. As a result, petitioners moved to terminate respondent's parental rights with respect to Kyeshon and Jarell. Thereafter, a trial was held before a Family Court justice on August 14, September 3, September 10, and December 15 of 2014. We summarize below the salient aspects of that trial.

**A**

**The Testimony of Sandra**

Sandra Armand, the mother of Kyeshon and Jarell, testified that respondent had not visited the boys in over two years, the last occasion being when he "picked them up" on Jarell's eleventh birthday in November of 2011. She testified that respondent had not set up a visitation schedule as to when he would visit the boys; she stated that, instead, he would seek to visit them "out-of-the-blue." It was her testimony that respondent's last phone conversation with Kyeshon occurred about one year before trial. She further testified that she had not received child support payments for her sons from respondent in twelve years. She also stated that, although respondent had from time to time purchased sneakers for the boys in past years, he had stopped making such purchases before 2012.

Sandra further testified that respondent had not been involved with the care of the children; she added that she and their stepfather (Gorvey) have provided for their daily needs over the years. She stated that, for at least six years, Gorvey has "effectively been [the boys'] father," providing "stability" in the household by being "a constant father figure" who "[attends]

their school meetings, helps with [their] homework, feeds them, [and] clothes them." Sandra testified that, in her judgment, it would be in the best interests of Kyeshon and Jarell to terminate respondent's parental rights.

**B**

**The Testimony of Respondent**

The respondent testified at trial that he was then serving a two-year sentence in Massachusetts for simple assault.[2] He further testified that, from the end of 2011 until some point in 2012, he would visit Kyeshon and Jarell. He testified that he had given cell phones to Kyeshon and Jarell when they were six and seven years old, respectively. It was his testimony that he had purchased clothes, sneakers, and headphones for them, the last time being at some point in 2013—although he could not recall in which month of that year. The respondent testified that, in July of 2013, he saw and gave thirty dollars to Kyeshon at a family barbecue. He further testified that, as a result of his incarceration that began in August of 2013, he had since that time not seen Kyeshon or Jarell, nor had he supported them. However, respondent stated on cross-examination that he had visited both his sons whenever he was not incarcerated.

**C**

**The Testimony of Kyeshon**

Kyeshon, who was fifteen years old at the time of trial, testified that he wanted his stepfather to become his legal father because of their "positive relationship." Specifically, he discussed how his stepfather is "reliable" and has "been there for [him] for a very long time" by giving him good advice, going to church with him, taking him to his basketball games, helping

---

[2] The respondent testified that, as a result of various convictions, he had been incarcerated for one year over the course of the years 2008 and 2009; seven months in 2010; forty days in 2011; and two years beginning in August of 2013.

him with his homework, and attending his school functions. He further testified that he had last seen respondent about "two years ago." When asked on direct examination whether respondent had provided any "benefits" to him, he replied: "Not really." Kyeshon testified that, in his view, terminating respondent's parental rights would be best for him and his family.

## D

### The Testimony of Jarell

Jarell, who was fourteen years old at the time of trial, testified that he "absolutely" wanted his stepfather to become his legal father. According to Jarell, his stepfather "has been in [his] life every single day for eight years," continuously "support[ing] [him] and [his] family." Specifically, he discussed how his stepfather is a "good role model," who helps him with his homework, goes to his football games, and treats his mother well. By contrast, Jarell testified that he was "mad" about respondent's repeated incarcerations. He stated that he had not "seen [respondent] in years;" he added that he had last seen respondent on his eleventh birthday (November 9, 2011). Jarell testified that he was "fine" with respondent losing his parental rights "[b]ecause [respondent] is barely in [his] life, and [he] barely get[s] to see him."

## E

### The Testimony of Respondent's Fiancée

The respondent's fiancée testified that she had been in a relationship with respondent for over two years. It was her testimony that, at one point, respondent asked her to contact Sandra; the fiancée stated that she did so in December of 2013 through Facebook and by phone in order to "get in touch with the children." She stated that, when he was incarcerated, Sandra "would allow [the boys] to speak to [their father] whenever they wanted to, but she would not allow them to go visit him." When asked whether she had conversed with Sandra after December of

2013, she replied: "No." She also stated that respondent had not thereafter asked her to contact Sandra again.

## F

## The Family Court's Decision

On February 25, 2015, the justice of the Family Court who had presided over the trial made several findings of fact, of which we set forth the most important. At the outset, the trial justice indicated that respondent's lack of contact with and financial support for Kyeshon and Jarell was "painfully evident," noting that there was such a lack "even when [respondent] was not incarcerated." Specifically, she found that respondent's last contact with both children was on November 9, 2011 and that he had "never provided * * * child support * * * and only provided occasional * * * gifts." The trial justice pointed to respondent's "long history of incarceration" as well as "[p]etitioners' and the children's wishes" as being significant factors for her to weigh in determining whether or not to terminate respondent's parental rights with respect to his sons. She ultimately found, by clear and convincing evidence, that respondent was unfit as a parent because he had "failed to provide support for these two children, and * * * [had] failed to have any contact with them for a period of more than six months prior to the filing of th[e] Adoption Petition, even when he had resources available to him to see his children." The trial justice further found that it would be in the best interests of Kyeshon and Jarell to terminate respondent's parental rights so that their stepfather might adopt them. On same day, she entered a decree terminating respondent's parental rights. A timely notice of appeal ensued.

## II

## Standard of Review

When reviewing a decision to terminate parental rights, this Court "reviews the record to determine whether legal and competent evidence lends support to the [Family Court] justice's ruling." In re Jake G., 126 A.3d 450, 456 (R.I. 2015). The findings of fact of a justice of the Family Court are "entitled to great weight and will not be overturned unless we determine that they are clearly wrong or the trial justice overlooked or misconceived material evidence." Id. (quoting In re Jah-nell B., 116 A.3d 784, 791 (R.I. 2015)). Additionally, we have consistently noted that, "in order to permanently sever the rights of a parent in his or her children, * * * [t]he state must prove parental unfitness by clear and convincing evidence in order to satisfy the parent's right to due process." Id. (quoting In re Jah-nell B., 116 A.3d at 791). However, we are ever mindful that the "best interests of the child outweigh all other considerations." In re Tory S., 988 A.2d 151, 155 (R.I. 2010) (quoting In re Kristen B., 558 A.2d 200, 203 (R.I. 1989)).

With respect to the review of adoption petitions, § 15-7-5(b)(2) sets forth that "[t]he standard of proof in these cases shall be by clear and convincing evidence and the court shall give primary consideration to the physical, psychological, mental, and intellectual needs of the child * * *."

## III

## Analysis

On appeal, respondent contends that the trial justice erred in finding: (1) that he is unfit "where unfitness had not been alleged as a ground in the [p]etition;" (2) that "[he] had the financial ability to provide proper care, maintenance and support" during his incarceration; and (3) "that termination of [his] parental rights would serve the best interest[s] of the children."

As a preliminary matter, respondent's first argument is unavailing. As this Court has previously noted, we consistently adhere to the venerable "raise or waive rule," which provides that "an issue that has not been raised and articulated previously at trial is not properly preserved for appellate review." In re Shy C., 126 A.3d 433, 434, 435 (R.I. 2015) (quoting State v. Gomez, 848 A.2d 221, 237 (R.I. 2004)). Here, respondent never objected to petitioners' submission of evidence to the Family Court on the issues of unfitness, willful neglect to provide proper care, maintenance and support, or abandonment. Nor did he ever object to petitioners' purported failure to specify these statutory grounds in the adoption petition. Upon a thorough review of the record, we perceive nothing in the instant case that "would induce us to make an exception to our well-settled raise or waive jurisprudence." Id. at 435. Accordingly, it is our view that respondent's first contention on appeal has been waived.

The respondent's remaining arguments are similarly unavailing and need not be addressed at any length—because respondent's parental rights were properly terminated on the ground of abandonment pursuant to § 15-7-7(a)(4).[3] In reliance upon that statute, we have on numerous occasions upheld the termination of parental rights of parents who were incarcerated—

---

[3] The authority for the termination of parental rights premised upon abandonment is set forth in G.L. 1956 § 15-7-7(a)(4), which provides the following:

> "The court shall * * * after notice to the parent and a hearing on the petition, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court finds as a fact by clear and convincing evidence that:

> "* * *

> "The parent has abandoned or deserted the child. A lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion."

as respondent had been for a substantial portion of Kyeshon and Jarell's lives. See, e.g., In re Serenity K., 891 A.2d 881, 884 (R.I. 2006) (stating that the responsibility to maintain substantial and repeated contact with one's child continues "even when the parent whose rights are at issue was incarcerated for the six-month statutory period"). An incarcerated parent who fails to "actively engag[e] in efforts to contact" his or her child "despite having opportunities to do so" runs the very real risk of it being held that the parent has "abandoned the child." In re DeKarri P., 787 A.2d 1170, 1171, 1172 (R.I. 2001); see In re Unique T., 822 A.2d 182, 184 (R.I. 2003).

Despite respondent having once inquired about his children through his fiancée in December of 2013, he failed to make further attempts to contact Kyeshon and Jarell while he was incarcerated. We consider noteworthy the trial justice's observation that, even during the points in time when respondent was not incarcerated, it was "painfully evident" that he had "never been [a] consistent source of financial and/or emotional support" with respect to both children. Notably, she found that respondent's last visit with both of his children was on November 9, 2011. There was ample evidence in the record that respondent had not contacted either son for at least a year—a period in excess of the statutory six months required as a basis for the termination of parental rights. Consequently, he cannot successfully rebut the prima facie evidence of abandonment. As we have repeatedly said in the past, this Court's reaction is one of "intolerance for a parent * * * who makes halfhearted or no attempts to visit or contact his or her child within the six-month statutory time period constituting prima facie evidence of abandonment." In re DeKarri P., 787 A.2d at 1172; see In re Serenity K., 891 A.2d at 884-85.

At the end of the day, the trial justice found that it would be in Kyeshon and Jarell's best interests to terminate respondent's parental rights so that their stepfather might adopt them. She stated, inter alia, that "[b]oth * * * young men have stated their desire to be adopted by their

- 8 -

stepfather," who "has been a father and role model for them for over eight years." In our opinion, there is no basis in the record to question the trial justice's conclusion that the children's best interests will be served by the termination of respondent's parental rights.

Having carefully reviewed the record and the findings of fact of the trial justice, we conclude that she did not err in finding, by clear and convincing evidence, that the respondent had abandoned Kyeshon and Jarell for the six-month period referenced in § 15-7-7(a)(4). Her findings of fact, which "are accorded great weight," were supported by a review of the evidence before her. In re Tory S., 988 A.2d at 155. Accordingly, we affirm the decree of the Family Court terminating the respondent's parental rights with respect to Kyeshon and Jarell.

## IV

## Conclusion

For the reasons stated herein, we affirm the decree of the Family Court and remand the record to that tribunal.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re Keyshon J. et al. |
| **Case Number** | No. 2015-230-Appeal. (P13-1229-1)<br>No. 2016-161-Appeal. (P13-1229-2) |
| **Date Opinion Filed** | February 14, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer From Lower Court** | Associate Justice Karen Lynch Bernard |
| **Attorney(s) on Appeal** | For Petitioners:<br><br>David J. Strachman, Esq.<br><br>For Respondent:<br><br>Susan B. Iannitelli, Esq. |